The State, *ex rel.* Reynolds, *v.* The Board of Commissioners of Tippecanoe Co.

————o————

THE STATE, EX REL. REYNOLDS, *v.* THE BOARD OF COMMISSIONERS OF TIPPECANOE COUNTY.

MANDATE.—*County Commissioners.—Liquor Permit.*—In deciding on an application for a permit to sell intoxicating liquors under the act of February 27th, 1873, the county commissioners act judicially, and not ministerially only; consequently, a mandate cannot issue to compel the commissioners to grant such permit.

SAME.—A mandate is never issued to control the exercise of judicial power or discretion in an inferior tribunal; its appropriate office is to set the subordinate tribunal in motion, to command it to proceed and give judgment, but not to direct it what judgment to give.

The State, *ex rel.* Reynolds, *v.* The Board of Commissioners of Tippecanoe Co.

SAME.—The use of the writ of mandate originated in the lack of any other specific legal remedy, and the rule has always been that where the party has such other remedy, he cannot resort to the use of this writ.

APPEAL.—*County Commissioners.*—*Liquor Law.*—An appeal lies to the circuit court, under the general statute relating to county commissioners, 1 G. & H. 253, sec. 31, from a decision of such commissioners in refusing to grant a permit to sell intoxicating liquors, there being no provision in the liquor law of February 27th, 1873, forbidding such appeal or making the decision of the commissioners final.

From the Tippecanoe Circuit Court.

*G. O. Behm, J. Park,* and *A. O. Behm,* for appellant.

*W. C. Wilson, J. H. Adams, W. D. Wallace,* and *A. Rice,* for appellee.

DOWNEY, J.—This was an application by the appellant for a writ of mandate against the appellees, to compel them to make an order granting to the appellant a permit to sell intoxicating liquors under the act of February 27th, 1873, Acts 1873, p. 151. The affidavit or petition on which the writ was asked sets forth the various steps which had been taken by the appellant in alleged conformity to the statute, the making of the application to the board to grant the permit, and their refusal. The commissioners having been required to sign a bill of exceptions containing the evidence, and having refused to do so, a bill of exceptions was signed by bystanders, which is made part of the affidavit or petition. It is claimed that the appellant had complied with all the requirements of the law to entitle him to a permit, and that the commissioners, disregarding their duty, wrongfully, arbitrarily, and maliciously refused to grant the same. The record contains a bond, which, it is averred, was tendered to the board, the sureties to which are alleged to be good and sufficient.

The commissioners demurred to the affidavit or petition, on the ground that the same did not state facts sufficient to constitute a cause of action, and because the court had no jurisdiction of the cause. This demurrer was sustained by the court, and final judgment was rendered for the defendant. The sustaining of the demurrer, and thereby holding that

the affidavit or petition did not state facts sufficient to justify the issuing of the writ, is the error assigned.

The writ of mandamus issued from the King's Bench in England, where originally the king sat in person. The issuing of the writ was regarded as the exercise of a prerogative power. The jurisdiction of the King's Bench was very high and transcendent. It exercised authority over all inferior jurisdictions within the bounds of their authority, superintended all civil corporations in the kingdom, and commanded magistrates and others to do what their duties required in every case where there was no other specific remedy. In this State, the authority to issue the writ does not exist as a prerogative power, but is conferred upon the courts by the power, and according to the pleasure, of the legislature. By statute, the power is conferred upon this court to issue the writ only when necessary for the exercise of its functions and powers. 2 G. & H. 320, sec. 738; *The State, ex rel. Powell,* v. *Biddle,* 36 Ind. 138. The authority to the circuit court to issue the writ is general, and it may be awarded to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station. *Id.* and succeeding section. These sections are not so specific concerning the cases in which the writ may issue, as to enable us in all cases to decide the question whether the writ should issue in the given case or not. Hence we must consult the common law authorities including the decisions of this court for aid in deciding the question. It may be stated as a general principle, that the writ is only granted for public persons, and to compel the performance of public duties. It can be resorted to only in those cases where the matter in dispute, in theory, concerns the public, and in which the public has an interest. But the degree of importance to the public is not nicely weighed.

In order to lay the foundation for issuing the writ, there must have been a refusal to do that which it is the object of the writ to enforce, either in direct terms, or by circumstan-

ces distinctly showing an intention in the party not to do the act. The court has the power to award the writ or to withhold it according to its discretion, but this discretion is a judicial and not an arbitrary one, and where there is a clear right to the writ, it is as much the duty of the court to issue it as to issue any other process. It is never issued to control the exercise of judicial power or discretion in an inferior tribunal. In Tapping on Mandamus, 13, it is said: "It does not lie to command the doing of a particular judicial act, for such an act is clearly discretionary, and therefore it is that the writ, when directed to judicial persons, is general in its terms."

. Counsel for the appellant insist that the act to be done by the commissioners in this case was simply ministerial in its character, they having nothing to do under the circumstances but to order the permit to be issued. Counsel for the appellees, on the contrary, contend that the duties of the commissioners were judicial in their nature, and that when, by law, it is made the duty of a court of inferior jurisdiction to pass upon any question of law or fact, or both, it is not competent for a court of superior jurisdiction, by mandate, to compel the inferior court to change its ruling on the question of law or its finding on the question of fact.

By the law under which permits are now granted to sell, etc., intoxicating liquors, when an application is made to the commissioners to grant a permit, they must examine the petition and be satisfied that it is in proper form, and that it has been signed by the applicant and by a majority of the legal voters resident in the ward, if in a city, or town, if it be in an incorporated town, or township, wherein the applicant proposes to sell the intoxicating liquor. As the statute prescribes what shall be stated in the petition, the question as to its sufficiency may be regarded as a question of law. The board has only to determine whether or not it conforms to the statute. The other questions are questions of fact or mainly questions of fact. The board must, in some legal

The State, *ex rel.* Reynolds, *v.* The Board of Commissioners of Tippecanoe Co.

manner, be satisfied that the signatures to the petition are genuine; that they were signed by the persons whose signatures they purport to be, or by some other person thereunto authorized by them.  They must also be satisfied that the persons, whose signatures are appended to the petition, are legal voters resident in the ward, town, or township where the applicant proposes to sell the liquors.  The question whether one is a voter or not is a question of fact and law.  The person must have attained the requisite age, and he must have been a resident of the voting precinct at the time of voting, etc.  After these facts have been ascertained, and the law prescribing who may vote applied to them, it can be determined whether the person is a voter or not, and entitled to sign the petition.  When the number of petitioners who are legal voters has been ascertained, it must then be ascertained what was the whole number of votes cast for candidates for Congress at the last preceding congressional election in the township, or the whole number of votes cast for councilman or trustee in any ward or town at the last preceding municipal election, etc., and if the petition is found to be signed by a majority of the legal voters in such precinct, then, so far as this point is concerned, it is the duty of the commissioners to decide in favor of the applicant.  If not, they must decide against him.

We are of the opinion that the commissioners, in deciding these questions, must be regarded as acting judicially, and not ministerially only.  The board of commissioners of each county is declared to be a corporation.  1 G. & H. 248, sec. 6.  The board is also a court.  They are authorized to adopt regulations for the transaction of business, and in the trial of causes they must comply, so far as practicable, with the rules of conducting business in the circuit court.  1 G. & H. 249, sec. 9.  They have power to administer oaths, to preserve order when sitting as such, to punish contempts by fine or imprisonment, to enforce obedience to their orders by attachment or other compulsory process, and to issue executions for fines assessed by them.  1 G. & H. 249, sec.

11. They may exercise powers of a local, administrative character when conferred upon them by the legislature. State Const., art. 6, sec. 10.

Counsel for appellant refer us to *Flournoy* v. *The City of Jeffersonville*, 17 Ind. 169. But we think there is nothing decided in that case inconsistent with what we have decided here. The point decided in that case was, that the issuing of a precept for the collection of an assessment for a street improvement was a ministerial, and not a judicial act. We make the following quotation from the able opinion of PERKINS, J., in that case :

" Judicial acts, within the meaning of the constitution of Indiana, are such as are performed in the exercise of judicial power. But the judicial power of this State is vested in courts. A judicial act, then, must be an act performed by a court, touching the rights of parties, or property,. brought before it by voluntary appearance, or by the prior action of ministerial officers, in short, by ministerial acts. See *Waldo* v. *Wallace*, 12 Ind. 569, where the constitutional provisions are quoted. The acts done out of court, in bringing parties into court, are, as a general proposition, ministerial acts ; those done by the court in session, in adjudicating between parties, or upon the rights of one in court *ex parte*, are judicial acts. 3 Bl. Com. 25. And the act is none the less ministerial, because the person performing it may have to satify himself that the state of facts exists under which it is his right and duty to perform the act.

" In *Betts* v. *Dimon*, 3 Conn. 107, where it was held that the administration of the poor debtor's oath was a ministerial, not a judicial act, HOSMER, C. J., in delivering the opinion of the court, said : ' Every selectman, before the appointment of an overseer, and every sheriff, previous to taking bail, makes inquiry to aid him in the legal performance of his duty.' So in *Crane* v. *Camp*, 12 Conn. 464, it was held that a justice of the peace acted ministerially in appointing freeholders to assess damages sustained by taking land for a public highway, though it was necessary for him to make inquiry

The State, *ex rel.* Reynolds, *v.* The Board of Commissioners of Tippecanoe Co.

as to the fitness of the persons appointed. A ministerial act may, perhaps, be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard, to, or the exercise of, his own judgment upon the propriety of the act being done."

If this be a correct definition of a ministerial act, then it is clear that the duties required of the commissioners under the act relating to the granting of permits are not ministerial.

The duties of the commissioners being judicial, it is clear, we think, from the authorities, that they cannot be compelled to discharge them in a manner dictated to them by a court of superior jurisdiction. See Moses Mandamus, 34, 35, 36, 41, 46, 47, 48, 49, 50, 52, 53, and 54, and the cases cited, and Tapping Mandamus, 13, original paging. *The Judges of the Oneida Common Pleas* v. *The People*, 18 Wend. 79, is an interesting and valuable case on this point. It is there held that in no case where a subordinate court acting judicially has, in the exercise of its discretion or judgment, made an adjudication, can the writ of mandamus properly issue; its appropriate office is to set the subordinate tribunal in motion —to command it to proceed and give judgment, and not to direct what judgment to give.

There is another ground on which we think the ruling of the circuit court was correct, and that is, that the party had another specific legal remedy. The use of this writ originated in the lack of any other specific legal remedy, and the rule has always been that when the party has such other remedy, he cannot resort to this writ. This doctrine has repeatedly been recognized and applied by this court. The following are some of the cases in which the rule has been applied: *Marshall* v. *The State*, 1 Ind. 72; *The Board of Comm'rs, etc.,* v. *Hicks*, 2 Ind. 527; *The Board of Trustees, etc.,* v. *The State*, 11 Ind. 205.

The other remedy which the party has in this case is an appeal from the decision of the board of commissioners to

The State, *ex rel.* Reynolds, *v.* The Board of Commissioners of Tippecanoe Co.

the circuit court. That a remedy by appeal is a remedy which will preclude the party from having the writ of mandate, appears to be settled by the authorities. Tapping Mandamus, 21, original paging, and cases cited. In *Marshall* v. *The State, supra,* a writ of error, in substance an appeal, was held to be such other remedy as would preclude the granting of the writ of mandate. See, also, on this point, *The Board of Commissioners, etc.,* v. *Hicks, supra.*

It is provided by statute, 1 G. & H. 253, sec. 31, that "from all decisions of such commissioners there shall be allowed an appeal to the circuit court * * * by any person aggrieved," etc. In passing upon an application for a permit, as we have seen, the commissioners must determine questions both of law and of fact. Their determination is a "decision" within the meaning of this section, and from it there is consequently an appeal to the circuit court. Counsel for the appellant say the law relating to the granting of permits makes no provision for an appeal. That is true, but neither does it make any provision denying an appeal. There being nothing in the nature of the questions decided which suggests that the commissioners alone can decide them, nothing in the law which makes the action of the commissioners final, or expressly forbids an appeal, and the language of section 31, *supra,* being sufficiently general to authorize it, we think an appeal may be taken. Whether a party interested in opposing the granting of the permit, and aggrieved thereby, may appeal under that section by filing the affidavit contemplated by it, is a question which is not now before us, and need not be decided.

It may be suggested that the bond offered in this case, the condition of which is: "Now if the said Conrad Singleton Reynolds, or any of his agents or employees, shall in all things conform," etc., can hardly be regarded as conforming to the statute.

The judgment is affirmed, with costs.