A. C. SNIPES v. CITY OF WINSTON.

(Decided April 17, 1900.)

*Alderman as "Street Boss"—Election Void—Contract Against Public Policy.*

The election by the Board of Aldermen of one of their own members as "Street Boss," an office of pay, at a meeting in which he is present and participating, is against public policy, and the contract for services will not be sustained, nor compensation enforced.

CIVIL ACTION against the city of Winston for balance claimed to be due the plaintiff for services as "street boss," taken by appeal from Justice's Court, and tried before *Shaw, J.,* at November Term, 1899, of FORSYTH Superior Court. His Honor rendered judgment against the plaintiff, who appealed to Supreme Court.

The whole case is developed in the opinion.

*Mr. J. S. Grogan,* for appellant.
*Messrs. Glenn & Manly,* for appellee.

FAIRCLOTH, C. J.    The Board of Aldermen of the city of Winston on March 1, 1898, elected the plaintiff a "street boss," and contracted to pay him $50 per month for six months.   His duties were to superintend, construct and repair the streets, and to keep in order the sewerage system of the city.   At the time of said election and contract, the plaintiff was a member of the Board of Aldermen, and participated in the meeting at which he was elected.

A new Board was elected and inducted into office on May 1, 1898, when the plaintiff was discharged and paid for the services then rendered.   He now sues for the balance specified in the contract for the next succeeding four months.   His Honor held, upon these facts, that the plaintiff could not recover, and rendered judgment for the defendant.

The Board of Aldermen, of which the plaintiff was a member, was the agent of the city, and its duty was absolute loyalty to the best interests of its principal.   The plaintiff was interested in obtaining the best possible contract from himself and his associates on the Board.   There was then antagonism between his duty to the city and his personal individual interest in making said contract.

It is against public policy to permit such contracts to be

enforced. It would be unsafe for the plaintiff, acting as employer, to become himself by the same bargain, an employee. *Smith v. Albany,* 61 N. Y., 444, is a case in point. The plaintiff being a member of the common council contracted with the Board to furnish horses and carriages for the procession celebrating July 4, which the council had in charge. It was held that he could not recover. Story on Agency well states the principle: "It may be correctly said with reference to Christian morals that no man can faithfully serve two masters whose interests are in conflict. If then the seller were permitted as the agent of another to become the purchaser, his duty to his principal and his own interest would stand in direct opposition to each other; and thus a temptation, perhaps in many cases too strong for resistance by men of feeble morals or hackneyed in the common devices of worldly business, would be held out which would betray them into gross misconduct, and even into crime. It is to interpose a preventive check against such temptations and seductions that a positive prohibition has been found to be the soundest policy, encouraged by the purest principles of Christianity. This doctrine is well settled at law. And it is by no means necessary in cases of this sort that the agent should make any advantage by the bargain. Whether he has or not, the bargain is without any obligation to bind the principal."

This principle can not be questioned, and experience has shown its wisdom. Common reasoning declares this principle to be sound, and the public is entitled to have it strictly enforced against every public official.

In obedience to this reasoning and upon these authorities we hold that the contract under consideration is void and unenforceable. It, therefore, becomes unnecessary to consider any other question presented in the record.

Affirmed.