WILLIAM A. STEVENS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, EX REL. WALTER KUBERSKI, RELATOR, v. CHARLES HAUSSERMANN, DEFENDANT.

Submitted January 27, 1934—Decided May 15, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the relator, *Stephen V. R. Strong* (*Morris Spritzer,* of counsel).

For the defendant, *John E. Toolan.*

The opinion of the court was delivered by

HEHER, J. Relator, Kuberski, challenges the title of defendant, Haussermann, to the office of councilman of the borough of South River, in the county of Middlesex. He was granted leave to exhibit in this court, in the name of the attorney-general, an information in the nature of a writ of *quo warranto,* to inquire by what warrant or authority defendant claims the office in question. There is incorporated in the state of the case a copy of a writ commanding the sheriff to summon defendant before this court, on a day specified, "to answer unto the State of New Jersey, ex rel. Walter Kuberski, relator, and pleading (*sic*) to the information in the nature of a *quo warranto* filed on behalf of the attorney-general of the State of New Jersey, and to show by what warrant he claims to hold, use, execute and enjoy the office of councilman of the borough of South River." It was stipulated that the petition for leave to file an information "shall be deemed to be the information herein;" and that the "statutory requirements concerning pleadings and notices are hereby waived and the agreed state of facts heretofore executed between the parties (submitted on the hearing of the rule to show cause) shall constitute an agreed state of facts in lieu of the usual factual pleadings, on final argument upon the writ."

No issue of law or fact is formally tendered. It is requisite that an issue be framed by appropriate pleadings. The object of a proceeding by information in the nature of a *quo warranto* is to try and determine the fact of usurpation. The information must plead facts showing usurpation, and the parties are required to proceed to an issue by plea or demurrer. 3 *Comp. Stat., p.* 4210, §§ 1, 6; *Bonynge* v. *Frank,* 89 *N. J. L.* 239; *Attorney-General* v. *Delaware and Bound Brook Railroad Co.,* 38 *Id.* 282. Unless title in respondents is shown by the information, it must be exhibited by plea. If the plea does not set out such title, it is bad. *Bonynge* v. *Frank, supra; Davis* v. *Davis,* 57 *Id.* 80. But, inasmuch as the propriety of the information is not ques-

tioned, and the parties join in a request that defendant's title to the office be determined, and the public interest requires that the issue be settled, we proceed, without approving the practice here followed, to a consideration of the meritorious question.

Haussermann and one Henry were duly-elected members of the borough council whose terms expired on December 31st, 1933. They were candidates for re-election at the general election held in November, 1933. Kuberski and one Klekner were candidates to succeed them. Kuberski was concededly elected. He received the highest number of votes polled. He qualified and took his seat at the organization meeting held on January 1st following. Haussermann and Klekner received an equal number of votes, the next lowest polled in the contest for these offices, while Henry received the lowest number of votes cast. Kuberski was therefore the only successful candidate of the four. Section 25 of article 3 of the act to regulate elections (*Pamph. L.* 1930, *pp.* 671, 683) provides that "whenever an equal number of votes shall have been given to two or more persons to fill any office for which they shall by law be qualified, the said office shall be deemed and taken to be vacant."

At a meeting of the council held on December 11th, 1933, Henry submitted his resignation as a member of that body, to take effect immediately. The resignation was thereupon formally accepted. The meeting was attended by four of the six members of the council, including Haussermann and Henry, and the motion to accept the resignation was adopted by a unanimous vote. It is stipulated that the mayor and the two absentee members of the council, "being opposed to the presentation and acceptance of said resignation, so stated and declined to be present at said meeting, and further declined to attend any subsequent meetings thereafter and until January 1st, 1934, unless given assurance that the resignation of said Henry would not be again presented or action taken with respect thereto." The requisite assurance being given, the mayor and the absentee councilmen attended a subsequent

meeting of the council held in December, 1933, but no action relating to the resignation was taken or proposed.

Haussermann insists that he is a holdover member of the council, within the intendment of section 4 of the act relating to boroughs (1 *Comp. Stat., p.* 230), providing that members of the council shall hold office for the term of three years, "and until their successors shall have qualified." The question at issue is the validity of this claim.

Concededly, were it not for the resignation of Henry, the claim of Haussermann would be untenable. He and Henry would then have had an "equal claim to fill the vacancy occasioned by the elective tie." At the election a successor to only one of the above named two members was elected. Neither could, in such circumstances, assert that his successor has not been elected, and that, consequently, he holds over. *The State, ex rel. Kilburn* v. *Conlan,* 56 *N. J. L.* 349; *Armstrong* v. *Whitehead,* 67 *Id.* 405. This statutory regulation, extending a councilman's term until his successor shall have qualified, is impracticable when sought to be applied to a case such as this. "Such a juncture exhibits a *casus omissus* in the act, which, of course, the court cannot supply." *Kilburn* v. *Conlan, supra.* The provision referred to is, in such circumstances, rendered inoperative.

But the insistence of defendant is that, because of Henry's resignation, he only had a claim to fill the vacancy, and that, consequently, the rule laid down in the cited cases does not apply. Relator replies (1) that the result of the election, and his qualification as a member of the council, are determinative of the issue, and that the status thereby created was in nowise affected by the resignation of Henry; and (2) that the resignation was ineffective for the following reasons, viz., (a) Henry, as a member of the council, voted to accept his own resignation; (b) defendant was disqualified because, in voting to accept Henry's resignation, he voted to continue himself in office beyond the expiration of his term; (c) the resignation was not legally accepted; and (d) the resignation was "a deliberate attempt to evade the force of

the rule laid down" in the cited cases, and, if effective, cannot serve to extend defendant's term.

The first insistence of relator is obviously without merit. It is the "equal claim" of two or more members of the body to the vacant office, *at the time of the occurrence of the vacancy* (in the statutory sense of a vacancy that results from the termination of the documentary title to the office), that renders the statutory provision inoperative. The object and policy of the statute are clearly to guard against actual vacancies in the councilmanic body, and a construction is required that will effectuate, and not thwart, the legislative purpose. If Kuberski were unable, for any reason, to qualify at the commencement of the term for which he was elected, or failed or refused so to do, the right of defendant and Henry to continue in office could hardly be gainsaid. Otherwise, the plain mandate of the statute, that members of a borough council shall hold office for the prescribed term, "and until their successors shall have qualified," would be disregarded.

And the claim of defendant that, under the section of the election law hereinbefore referred to, the office becomes vacant, when there is no election by reason of a tie vote, is equally fallacious. We do not discern a legislative purpose to repeal the holdover provision of the Borough act. There is no express repealer, and repeal by implication is disfavored in the law. A legislative purpose to effect the repeal of an earlier statute, not made the subject of an express repealer, must be so clearly indicated as to leave no reasonable basis for doubt. *Adams* v. *Plainfield,* 109 *N. J. L.* 282; *affirmed,* 110 *Id.* 377. Moreover, it is clear that the "vacancy" contemplated by the statute is such as exists when there is "no documentary title to the office." *Abrams* v. *Smith,* 98 *Id.* 319.

We are thus brought to a consideration of the contention that there was not an effective resignation of the office held by Henry. The resignation of a public office does not become effective until it is presented to the proper authority, and accepted by it. In the absence of a specific regulation to the

contrary, the proper authority to accept a resignation is that which has the power to fill the vacancy. *Fryer* v. *Norton,* 67 *N. J. L.* 537; *Reeves* v. *Ferguson,* 31 *Id.* 107; *Edwards* v. *United States,* 103 *U. S.* 471; 26 *L. Ed.* 314; *Commonwealth* v. *Krapf,* 249 *Pa.* 81; 94 *Atl. Rep.* 553. The acceptance of a resignation of a municipal officer is now a statutory requirement. By an amendment to the Home Rule act (*Pamph. L.* 1920, *p.* 248), it is provided that whenever an officer of a municipality shall cease to be a *bona fide* resident therein, *or the resignation of any such officer shall have been accepted by the proper authority,* a vacancy in the office held by such person shall immediately exist. The underlying considerations for this rule are that civil officers are appointed for the purpose of exercising the functions and carrying on the operations of government, and maintaining public order, and they cannot throw off their responsibilities at their own pleasure. To refuse an office in a public corporation connected with local jurisdiction was a common law offense, and punishable by indictment. An office was regarded as a burden which the appointee was bound, in the common interest, to bear. It is a corollary of this that an office conferred and assumed cannot be resigned without the consent of the proper authority, signified by the acceptance of the resignation. This doctrine is deeply rooted in public policy. It is one calculated to avoid the inconvenience and embarrassment consequent upon the want of public servants to execute the laws, and it thus safeguards the public interest.

The resignation was undoubtedly tendered to the proper authority. It was presented to the mayor and council of the borough, at a regular meeting attended by a quorum. The mayor and councilmen compose the borough council, and four councilmen, exclusive of the mayor, constitute a quorum for the transaction of business. *Pamph. L.* 1931, *p.* 139. The resignation of an elective officer must be made to the authority empowered to fill the vacancy, or to call an immediate election for the purpose. By an amendment to the Borough act (*Pamph. L.* 1922, p. 248) the mayor is empowered, with the

advice and consent of the council, to fill a vacancy in an elective office within thirty days after the vacancy occurs, failing which the council is authorized to do so. The absence from the meeting of the mayor and two members of the council is of no significance. As to this, we deem it necessary to point out only that these absentees knew, in advance of the meeting, that the resignation was to be presented, and remained away to avoid action thereon. It is so stipulated.

It remains to consider whether the resignation was made effective by due acceptance. We have concluded that it was not. Henry was disqualified from voting on the motion to accept his resignation. His personal interest created the disqualification. Generally, public policy forbids the participation of a member of a municipal governing body in any matter before it which directly or immediately affects him individually. Considerations of public policy require the acceptance of a resignation to make it effective. This requirement is designed to safeguard the public interest, and it follows, as a necessary consequence, that the officer tendering his resignation cannot participate in the proceedings or action taken thereon. In the clash of interests—those of the public and the officer who seeks to resign his post—the action to be taken must be determined by a disinterested body.

This municipal action is judicial in character. The distinction between legislative and judicial functions, when exercised by a body having the power to execute both legislative and judicial acts, is stated thus in a case in this court: "A legislative act must be regarded as one which prescribes a general rule of conduct, while a judicial act is one which imposes burdens or confers privileges in specific cases, according to the finding of some person or body, whether the facts exist which make a general rule applicable to the specific case, or according to the discretionary judgment of such person or board as to the propriety of imposing the burden or granting the privilege in a specified case." *West Jersey Traction Co.* v. *Board of Public Works of the City of Camden,* 56 *N. J. L.* 431, 437; *affirmed, sub nom. Camden Horse*

*Railroad Co.* v. *West Jersey Traction Co.,* 57 *Id.* 710. See, also, *City of Camden* v. *Mulford,* 26 *Id.* 49; *State, Vanatta* v. *Morristown,* 34 *Id.* 445. In the West Jersey Traction Company case, it was held that the adoption of an ordinance granting to a street railway company authority to lay its tracks in streets of the municipality was a *quasi*-judicial act. And an ordinance laying out a particular street, or ordering it to be paved, has been held to be judicial in its quality. *Van Gilder* v. *Freeholders of Cape May,* 83 *Id.* 139; *Sears* v. *Atlantic City,* 73 *Id.* 710; *Sage* v. *Laurain,* 19 *Mich.* 137; *Waldron* v. *Berry,* 51 *N. H.* 136; *In re Conant,* 102 *Me.* 477; 67 *Atl. Rep.* 564. An ordinance fixing the qualifications of applicants for a license to sell liquor, and the conditions upon which licenses should be granted, is legislative, while the granting of a license is judicial. *Dufford* v. *Nolan,* 46 *N. J. L.* 87; *State, ex rel. Reynolds* v. *Board of Commissioners of Tippecanoe,* 45 *Ind.* 501. And this court has held that the adoption of a resolution awarding a contract for municipal printing, based upon a bid received in pursuance of an invitation to submit bids, is *quasi*-judicial in character. *Drake* v. *Elizabeth,* 69 *N. J. L.* 190. There it was held that: "A determination of this nature, confined to a specific case and based upon the finding of a body in which a discretionary judgment is reposed, is so far judicial in character as to be voidable if any one of such *quasi* judges who participated was at the time disqualified by reason of private interests at variance with the impartial performance of his public duty." The action of a municipal governing body in determining an election contest according to the weight of conflicting evidence is judicial in its nature. *Rollins* v. *Connor,* 74 *N. H.* 456; 69 *Atl. Rep.* 777.

It is a corollary of the foregoing that the concurrence of an interested member in the action taken by the body taints it with illegality. It is a principle firmly imbedded in our jurisprudence that a person acting in a judicial capacity should not be influenced by any personal interest. *Long* v. *Union,* 79 *N. J. L.* 70. The general rule is that no man can

be a judge in his own cause. This rule admits of only one exception, *i. e.,* when there is no one else to perform the duty, "for it is clear that while the performance of a judicial duty by an interested officer *may* occasion a failure of justice, yet it is equally clear that the disqualification of the only person who can adjudicate strips suitors of their ability to pursue their legal rights at all, and so *must* result in a failure of justice." *West Jersey Traction Co.* v. *Board of Public Works of the City of Camden, supra.* In that case it was held that the *quasi*-judicial action so affected was voidable. And it has been held that such action is utterly void. *Young* v. *Mankato, 97 Minn.* 4; 105 *N. W. Rep.* 969; 3 *L. R. A.* (*N. S.*) 849; *Snipes* v. *Winston, 126 N. C.* 374; 35 *S. E. Rep.* 610.

And it is likewise a firmly established rule that it is immaterial that the result reached is not produced by the vote of the disqualified member. "The infection of the concurrence of the interested person spreads, so that the action of the whole body is voidable." / *West Jersey Traction Co.* v. *Board of Public Works of the City of Camden, supra;* State, *Winans* v. *Crane, Collector of Cranford Township, 36 N. J. L.* 394. This is the general rule. | *Rollins* v. *Connor, supra.* | It is supported by a two-fold reason, viz., first, the participation of the disqualified member in the discussion may have influenced the opinion of the other members; and secondly, such participation may cast suspicion on the impartiality of the decision. *Reg.* v. *Justices, 6 Q. B.* 753; 51 *E. C. L.* 753; *Oakley* v. *Aspinwall, 3 N. Y.* 552. It being impossible to determine whether the *virus* of self-interest affected the result, it must needs be assumed that it dominated the body's deliberations, and that the judgment was its product.

In that situation, it is unnecessary to determine whether defendant's interest was such as to affect his qualifications as a member of the body exercising this *quasi*-judicial function.

Judgment of ouster may be entered.