Audia W. Arbogast *et al v.* Patrick H. Shields

(No. 9166)

Submitted February 19, 1941.  Decided March 15, 1941.

*Stathers, Stathers & Cantrall* and *Lawrence R. Lynch,* for plaintiff in error.

*W. Taylor George* and *W. Taylor George, Jr.,* for defendants in error.

Rose, Judge:

Patrick H. Shields prosecutes this writ of error to a judgment of the Circuit Court of Harrison County, a visiting judge sitting, by which he was removed from the office of member of the Water Board of the City of Clarksburg, upon charges contained in a petition, filed against him by Audia Arbogast and others.

The City of Clarksburg operates under a charter enacted by the Legislature in 1921, being Chapter 6, Municipal Charters, of the Acts of that year, which provides for a water board of three members, one of which shall be elected every two years, and whose term shall be six years.

The general powers of the water board are set out in great detail in section 41 of the act, and may be summarized as the management of the water works of the City of Clarksburg, the plant of which is to be constructed, operated and maintained solely from the income from the sale of water.

The respondent, Patrick H. Shields, was elected a member of the water board for the six-year term beginning the first day of May, 1935, and regularly qualified, and has ever since been acting as such. The other members of the board were J. Ransel Romine, whose term began May 1, 1937, and March L. Pritchard, whose present term began May 1, 1939.

The charges against Shields were two: First, that at a meeting of the said board on the third day of May, 1939, Shields and Pritchard voted to employ Pritchard as "construction foreman" under the board, at a salary of $3,120.00

per year, the third member of the board, Romine, voting against the appointment, Pritchard then being ineligible to that appointment by reason of his membership on the board; that Shields subsequently retained, or aided in retaining, Pritchard in that position after his disqualification was made to appear; and that Shields wasted and misappropriated the funds of the water board by joining with Pritchard in signing vouchers for the latter's salary as such foreman. Second, it is charged that Shields solicited and obtained from the board contracts for fire insurance covering property of the board, and certain accident and public liability insurance covering motor vehicles operated by the board, for which he received for his own use and benefit large sums of public money.

Shields answered, admitting most of the facts set out in the petition, but showing that Pritchard was first elected as member of the water board in 1918, and that he had been subsequently elected in 1921, 1927, 1933 and 1939, and that in 1919, he was appointed by the then existing water board to the position of construction foreman, and had held this position continuously until his resignation in December, 1939, not under appointment by the board, but by virtue of the terms of section 38 of said charter, which provides that:

> "The water board of the city of Clarksburg in existence when this act goes into effect shall be continued, and the administrative officers and employees of the water board shall continue in their respective offices and employments until removed and superseded by the water board."

The answer also sets forth that the policies in question were issued, not by Shields individually, but by the Shields Insurance Company, Inc., a corporation, which had been in business as an insurance agency since 1925, and had outstanding only nineteen shares of stock, three of which were owned by himself and sixteen by his wife; that he was general manager of this corporation at a fixed salary, and also its secretary and treasurer; that the premiums charged on all fire policies were at the standard rate,

while the automobile liability policies were issued at a rate approximately twenty per cent below standard rates; and that all premiums were paid, not to him, but to said corporation.

Evidence was taken by both the petitioners and the respondent. The court found against the respondent on both branches of the case, and ordered his removal from office.

The first charge appears to have been brought under section 83 of the charter, which provides that:

"Any elective officer may be removed at any time by the circuit court of Harrison County, West Virginia, for any ground or cause for which a member of the county court of the county or other county officer may be removed."

Section 7, article 6, chapter 6 of the Code, provides that:

"Any person holding any county, magisterial district, independent school district, or municipal office * * * may be removed by the circuit court of the county wherein such officer or person resides, or the judge of such court in vacation, on any of the grounds, or for any of the causes, for which a state officer may be removed under section five of this article, or for any of the causes or on any of the grounds provided by any other statute."

Section 5 of said article provides that:

"Any state officer holding any elective office (except the governor, any judge, or a member of the legislature of this State) may be removed from office, by the governor, in the manner provided in the following section: (a) when disqualified from holding the office under any provision of the Constitution of this State, or any law now in force, or which may hereafter be enacted, whether such disqualification arose before or after his induction into office; (b) for official misconduct, malfeasance in office, incompetence, neglect of duty, or gross immorality."

Section 1 of the same article provides:

"The term 'neglect of duty,' or the term 'official misconduct,' as used in this article, shall include the willful waste of public funds by any officer or officers, or the appointment by him or them of an incompetent or disqualified person to any office or position and the retention of such person in office, or in the position to which he was appointed, after such incompetency or disqualification is made to appear, when it is in the power of such officer to remove such incompetent or disqualified person. The term 'incompetence,' as used in this article, shall include the wasting or misappropriation of public funds by any officer, habitual drunkenness, habitual addiction to the use of narcotic drugs, adultery, neglect of duty, or gross immorality, on the part of any officer."

The second charge against Shields is obviously brought under section 12 of the charter, which reads as follows:

"Any officer of the city who shall become or be directly or indirectly interested in any contract or in the profits to be derived therefrom with the municipality shall forthwith forfeit his office; and in addition thereto, any such contract shall be void and unenforcible against the city; and the acceptance by any officer of any interest in such contract or of any gift or gratuity from any person, firm or corporation dealing with the city which might influence the officer in the discharge of any duty shall disqualify the person forever from holding any office or employment in the government of the city of Clarksburg; and in addition, such person shall be subject to criminal prosecution under any ordinances of the city or laws of the State of West Virginia."

We are clearly of the opinion that the acts charged against the respondent constitute sufficient grounds for his removal from office, and that if any of the separate and distinct charges are sustained by the evidence, his removal must be affirmed.

It is very plain that Pritchard, a member of the water board of the City of Clarksburg, chosen by the electorate,

was ineligible for appointment to any office or "position" by said board. No officer with power to appoint to another office or position is permitted to appoint himself. "It is contrary to the public policy to permit an officer, having the power to appoint to an office, to exercise that power in his own interest by appointing himself." Mechem's Public Offices and Officers, sec. 112. Consult: 2 McQuillin on Municipal Corporations (2d Ed.), sec. 477; Throop on Public Officers, sec. 120. And no board consisting of more than one officer can appoint one of its members to another office or position. The common conscience of mankind revolts at the idea that a public officer should confer upon himself the power or emoluments of an additional office, or that a group of officers holding the power of appointment should confer such a position or office upon one of their number. Throop on Public Officers, sec. 610; *Ehlinger v. Clark,* 117 Tex. 547, 8 S. W. (2d) 666. The statute, above quoted, expressly makes it "neglect of duty" and "official misconduct" to appoint a disqualified person to any office or position, or to retain in office or employment a disqualified person after his disqualification has been made to appear, where the officer has the power to remove him, and makes the wasting or misappropriation of public funds by an officer, "incompetence."

But does the record before us show that Pritchard was elected construction foreman on the third day of May, 1939? The minutes of the board show that, after the election of a manager, Romine offered a resolution that the board proceed to elect certain named employees, which failed of adoption, and then follows this entry:

> "Mr. Shields made the following motion which was seconded by Mr. Pritchard: 'I move that all other employees of the board be retained in their respective positions and employments.'
>
> "Mr. Romine voted 'no' on this motion."

These minutes do not show distinctly that either Shields or Pritchard voted for the motion, but the evidence of the secretary of the board on this point is as follows:

> "Q. Mr. Shields voted for it and Mr. Pritchard?
> A. They did."

Assuming that this evidence was admissible, and that Shields and Pritchard actually voted for the motion, did this constitute an appointment of Pritchard to the position of construction foreman? Prichard being interested in the appointment was ineligible to vote. *Armstrong* v. *Whitehead,* 67 N. J. L. 405, 51 Atl. 472; *People* v. *Pearson,* 121 Misc. 26, 200 N. Y. S. 60; *Parrish* v. *Town of Adel,* 144 Ga. 242, 86 S. E. 1095; *State* v. *Goodrich,* 86 Conn. 68, 84 Atl. 99; 2 McQuillin on Municipal Corporations (2d Ed.), sec. 629. The evidence, therefore, clearly shows that there was only one vote cast for, and one against, Pritchard's appointment. There was thus no election or appointment.

However, Pritchard did act as "construction foreman" while Shields was a member of the water board. But did Shields retain, or assist in retaining, him in that position after his disqualification was made to appear, when it was in his power to remove or assist in removing him from that employment? The evidence does not so show. In order to have removed Pritchard, it would have been necessary that Romine join with Shields in such action. The record does not disclose anywhere that Romine would have cooperated. It appears that Romine voted "no" on the blanket motion for the re-employment of all the employees of the water board. Whether that vote was against Pritchard or some other one or more of the employees, or whether it was merely a vote against the blanket reappointment of all the employees, does not appear. Romine has held the office of water commissioner since May 1, 1937, and nowhere is it shown that there was any move or inclination on his part to terminate the employment of Pritchard as such foreman. If Romine would have united with Shields to remove Pritchard, the fact could easily have been established by calling him as a witness. The failure so to produce this vital witness, justifies this Court in assuming that his testimony would not have aided the petitioners. The record in this case fails to prove that it lay in the power of Shields to remove, or to assist in removing the ineligible employee.

Nor is the charge of wasting public funds by the payment of Pritchard's salary sustained by the evidence. It

does not appear that the money so paid was in fact wasted. Pritchard had been construction foreman for almost twenty years, during which time he had been re-elected continuously as a member of the water board. It is, therefore, to be presumed that his service was satisfactory to the public. If, as foreman, he had not been earning his salary, evidence to that effect certainly could have been produced. Romine evidently considered Pritchard a competent man for the position, since, upon his motion, Pritchard was re-elected foreman immediately after the latter's resignation as member of the water board. The payment of this salary may have been irregular, and may be subject to criticism for other reasons, but it certainly bears no marks of being a waste or misappropriation of public funds. *Hamrick* v. *McCutcheon,* 101 W. Va. 485, 133 S. E. 127.

Our conclusion, therefore, is that the allegations set forth in the petition charging misconduct in office by Shields in connection with the appointment and retention of Pritchard as construction foreman and the signing of vouchers for the payment of his salary is not sustained by the evidence.

On the charge that Shields solicited and secured contracts for insurance from the water board for companies which he represented as agent, and received for his own use and benefit a certain portion of the premiums paid therefor, the *allegata* and *probata* are at some variance. There seems to be no dispute that the policies were all written by the Shields Insurance Company, Inc., as agent, and that all moneys paid by way of premiums went directly to this corporation. But Shields and his wife owned all the stock in the corporation. He was also its secretary, treasurer, and general manager. It was not, however, a corporation organized for the purpose of handling this business, but had been in existence for many years before Shields came on to the board. Also, a number of the policies issued were merely renewals of policies carried before Shields became a member of the water board, and which were renewed as a matter of course without any formal action on the part of the board. It

further appears distinctly that the municipality lost nothing, the property policies being written at the standard rate and the personal liability policies at less than the customary premiums. All these things tend to show that the writing of these policies by the Shields agency was no detriment to the city. Nevertheless, the fact remains that in thus handling this insurance business, Shields did a thing which the charter of the city expressly forbade. The circumstances that the insurance was handled through a corporation mitigates the evil not at all. Shields, as a stockholder in the Shields Insurance Company, at least indirectly, shared in the profits which that company derived from the handling of this insurance. True, it is shown that no dividends were paid by the corporation while these policies were carried. This is clearly immaterial. The profits went into the company; the company's finances were benefited thereby, and, whether it resulted in dividends or not, and whether these commissions increased a surplus or merely decreased a deficit, there was a direct benefit from the insurance contracts to all holders of stock in the Shields Insurance Company.

It may be that, in his capacity, as salaried manager independently of the company's profits, Shields would not be a transgressor. In *County Court* v. *City of Grafton,* 77 W. Va. 84, 86 S. E. 924, it was held that three employees of the Baltimore & Ohio Railroad Company, who were members of the city council, were not disqualified to vote on an ordinance granting the railroad company certain rights and privileges on the streets of the city. But the direct interest of Shields as a stockholder in the Shields Insurance Company is not attempted to be denied, and plainly comes within the interdiction of the statute.

It is further argued that the good faith of the defendant, and his efficiency as a public official, preclude the idea of "willfulness" in his errors, and, therefore, exempt him from the penalties of the statute. Such position has not yet been taken by this Court, and we can discover no justification in the controlling statutes, nor in any recognized public policy, which should induce us thus to exon-

erate the respondent. It is true that in *Hamrick* v. *Mc-Cutcheon,* 101 W. Va. 485, 133 S. E. 127, the court said:

> "Forfeiture of a fiscal office will not be declared under Sec. 12, Ch. 28A, Code, unless the statute be negligently or wilfully violated."

But the statute mentioned, which is no longer in our Code, expressly provided for the removal of such officer "who *willfully* violates any of the provisions of this act." And it is also true that in the case of *Kesling* v. *Moore,* 102 W. Va. 251, 135 S. E. 246, it was held that:

> "Misconduct in office is any unlawful behavior by a public officer in relation to the duties of his office, willful in character."

But the court also held in the same case that:

> "The commission of the acts prohibited by section 16a, chapter 151, Barnes' Code 1923, constitutes misconduct in office."

The latter holding clearly means that "willfulness" is not a necessary element of a statutory act which is the basis of removal from office, unless so made by the statute itself. The act under which the present proceeding was instituted and prosecuted makes the mere commission of the inhibited act a sufficient basis for removal from office. Nothing is said of intent, willfulness, knowledge or purpose. The doing of the forbidden act alone is the sole basis for impeachment. Doubtless the legislature considered the evil sought to be avoided of sufficient magnitude to justify the severity of the penalty. No extenuating circumstances are permitted to excuse the officer, and no choice is left to the court in the matter of penalty. If the act is done, whether ignorantly, innocently, willfully, or fraudulently, the result is the same, so far as forfeiture of office is concerned.

The petition does not charge, and the evidence does not show, that the interest of Shields in these insurance contracts "might influence the officer in the discharge of any duty," and thus render him ineligible to future office in

his city, as further provided in section 12 of the charter, hereinbefore quoted, nor does the judgment of the trial court purport to inflict such disqualification. In this, also, we believe the lower court correct.

The facts in the case clearly justify the conclusion of the circuit court on the charge that the defendant was interested in the inhibited insurance contracts, from which forfeiture of his office necessarily follows. The order of removal is, therefore, on this charge alone, accordingly affirmed.

*Affirmed.*