STATE *ex rel. v.* THOMPSON.

(*Jackson,* April Term, 1951.)

Opinion filed February 9, 1952.

Dissenting Opinion filed Feb, 9, 1952.

396

DICK JERMAN, Attorney General, of Alamo, and HUDGINS & HUDGINS, of Union City, for plaintiff in error.

DUDLEY PORTER, of Paris, for defendant in error.

Neil, Chief Justice, dissented in part.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is a suit in the nature of a quo warranto brought under Code Sections 9336 et seq. in the name of the State of Tennessee by the District Attorney General upon the relation of eleven citizens and residents of the municipality of Paris, Tennessee. The bill charges the defendant, J. J. Thompson, with having forfeited his office as a member of the Board of Commissioners of that municipality, and charges Thompson with unlawfully holding or exercising its office of City Manager. The bill seeks a judgment so holding as to both offices.

The Charter of the municipality of Paris is the Uniform City Manager-Commission Form of Government Charter provided for by Code Sections 3517-3647. Its Board of Commissioners, called a "council", consists of five members who hold office for a term of four years, two being selected by the people at one election, and the remaining three at an election held two years later. Under its charter this Board selects one of its members as Mayor and one as Vice-Mayor. The Mayor receives a salary of $600 per annum. The salary of the remaining commissioners is $300 a year. This charter requires its Board of Commissioners to "appoint and fix the salary of the city manager", Code Section 3554. At an election held in December, 1950, Lawrence King, J. Woods Hill and the defendant, J. J. Thompson, were elected commissioners (members of the Council) for a period of four years commencing January 2, 1951.

At the initial meeting of the new board on January 2, 1951, after organizing by electing King Mayor and Thompson Vice-Mayor, there was introduced a resolution reading, in so far as pertinent here, as follows: "Be it further resolved, That J. J. Thompson be appointed City Manager of the City of Paris, Tennessee, at a yearly salary of $2,500.00. The said J. J. Thompson will be inducted into office on Jan. 2, 1951, will execute a fidelity bond in the amount of $10,000.00, and will serve at the will of the Board of Commissioners." The J. J. Thompson mentioned in the resolution is one of the three men who had just taken office as commissioners.

King moved the adoption of the resolution and Thompson seconded it. These two commissioners and Hill voted for it. The remaining two commissioners did not support it. One of them voted against it. The other did not vote. Thompson was thereupon declared elected, and

immediately assumed office by the execution and filing of the required bond and oath of office. Thereupon, and at the same session, he discharged the Chief of Police and the City Attorney, and appointed two others to fill these offices. He, therefore, immediately assumed the office and the exercise of its powers.

The insistence made by the bill is that (1) he vacated his office as commissioner by accepting the office of City Manager and (2) the council was without authority under the common law to elect one of its own members City Manager; hence, that the election of Thompson as City Manager was void.

The Chancellor held that Thompson vacated his office as a Commissioner by accepting and assuming the office of City Manager, but that his appointment as City Manager was valid. Both sides have appealed. The State's insistence is that the purported election of Thompson as City Manager is void for the reason above stated. Thompson's insistence is (1) that his election as City Manager is valid and (2) that by accepting it, he did not thereby vacate his office as a member of the City Council.

"The rule at common law is that, where one accepts a second office incompatible with one already held by him, the office first held is thereby ipso facto terminated without judicial proceedings of any kind". *State ex rel. Little* v. *Slagle,* 115 Tenn. 336, 341, 89 S. W. 326, 327. However, if Thompson's appointment to the second office was void, it follows that his attempted acceptance of that second office was likewise legally ineffective. In this plight of the case the question arises as to whether this common law rule would apply. It is necessary, therefore, to first determine whether the

▰▰▰▰▰▰▰ ▰▰▰▰▰▰

Council had the authority to appoint one of its own members its City Manager.

▮ The Charter of Paris provides that "the Board of Commissioners shall appoint and fix the salary of the City Manager". He holds office at the will of this Board except that he cannot be removed for the first twelve months after his appointment other than for incompetency, malfeasance, misfeasance or neglect of duty, and in that case he is entitled to written charges and to a public hearing by the Board. But the decision of the Board after such hearing is final, Code Section 3554. The City Manager is required to attend all meetings of the Board and participate in its discussions, but he has no right to a vote in that body, Code Section 3560(e). He is the administrative head of the municipal government under the direction and supervision of the Board, Code Section 3559. It is his duty "to recommend to the board of commissioners for adoption such measures as he may deem necessary or expedient", Code Section 3560(f).

Of course, it was not the intention of the Legislature to permit the City Manager to be one of the five members of the Board which determines whether or not he shall be discharged for cause, or without cause after twelve months, or, as a member of the Board, to accept or reject or modify his own recommendation made as City Manager, or, as a member of the Board, to direct and supervise himself as City Manager in the administration of the affairs of the City. This statement of the situation seems conclusive of the fact that the two offices are completely incompatible.

As heretofore stated, the statute (the Charter of Paris) expressly provides that "the board of commissioners shall appoint and fix the salary of the city manager".

The Legislature, in enacting this statute, knew that each commissioner is a trustee charged with the utmost fidelity to his cestui que trust, the City of Paris, and that each commissioner probably could not with due fidelity mingle his personal interests and affairs with his duties as such trustee, human nature being what it is. Therefore, when this statute provided that the commissioners should fix the salary of the City Manager it did by necessary implication forbid the Board from appointing one of its own members to that offce. No other effect can logically be given this provision of the statute.

The immediately above stated necessary implication of the statute (Charter of Paris) is in accord with the common law rule on the subject. The text of 42 American Jurisprudence, page 955, Section 97, in so far as pertinent here, is this: "So, it is contrary to public policy to permit an officer having an appointing power to use such power as a means of conferring an office upon himself, or to permit an appointing body to appoint one of its own members."

The text of McQuillin on Municipal Corporations revised Volume 2, page 159, Section 477, is this:

"Officers who have the appointing power are usually disqualified from appointment to office to which they may appoint. Such exercise of the appointive power is against public policy, and is void on its face, and the one so appointed, it has been said, is not even a de facto officer.—"

"Pursuant to the general rule, a council, although possessing the power of appointment may not select one of its own members as clerk of the council, or as a member of the board of assessors. For a like reason, a member cannot vote to confirm his own appointment to office."

There are a number of decisions of this court dealing with Board members voting in violation of Code Sections 1874 and 3497 for a contract in which they were personally interested. But those decisions are not applicable to the question with which we are dealing since the rights and obligations of a public office are created by law, not by contract. *Cornett* v. *City of Chattanooga*, 165 Tenn. 563, 567, 56 S. W. (2d) 742. Nor have we been able to find any decision of this court dealing with this question, but we are referred to or find a number of such decisions in other States. Those decisions are fairly uniform in holding that a council or board which has the power and duty of appointment to an office cannot select one of its own members. Some that seem quite in point are *Snipes* v. *City of Winston*, 126 N. C. 374, 35 S. E. 610; *Meglemery* v. *Weissinger*, 140 Ky. 353, 131 S. W. 40, 31 L. R. A., N. S., 575; *Gaw* v. *Ashley*, 195 Mass. 173, 80 N. E. 790; *Board of Commissioners* v. *Montgomery*, 170 Ga. 361, 153 S. E. 34, 37; *Arbogast* v. *Shields*, 123 W. Va. 167, 14 S. E. (2d) 4.

The controlling principle as stated in the Kentucky case, supra [140 Ky. 353, 131 S. W. 41], is:—"The fact that the power to fix and regulate the duties *and compensation* of the appointee is lodged in the body of which he is a member is one, but not the only, reason why it is against public policy to permit such a body charged with the performance of public duties to appoint one of its members to an office or place of trust and responsibility." (Emphasis supplied). The North Carolina case, supra [126 N. C. 374, 35 S. E. 610], in discussing this rule, said that it "has been found to be the soundest policy, encouraged by the purest principles of Christianity", and that "common reasoning declares this principle to be sound, and the public is entitled to have it strictly

enforced against every public official.'' The Georgia case, supra, in holding that the Commissioners of the City were without authority to appoint one of their members to the office of City Manager, noted that the office of commissioner and that of City Manager were incompatible. The West Virginia case, supra [123 W. Va. 167, 14 S. E. (2d) 7], in likewise so holding said:—''And no board consisting of more than one officer can appoint one of its members to another office or position. The common conscience of mankind revolts at the idea * * * that a group of officers holding the power of appointment should confer such a position or office upon one of their number. Throop on Public Officers, Section 610; *Ehlinger* v. *Clark,* 117 Tex. 547, 8 S. W. (2d) 666.''

█ Although we are keenly aware of an individual hardship that may result, we are compelled to conclude that both (1) under a proper construction of the statute (Charter of the City of Paris) and (2) under the common law, the Board of Commissioners of the City of Paris was without authority to appoint one of its own members to the office of City Manager of that City, and that the attempted appointment of Thompson was void; therefore, ineffective to place him in that office.

█ In considering the insistence that Thompson vacated his office as a city commissioner when he undertook to assume the office of City Manager, it must be kept in mind that this suit is a proceedings under the quo warranto statute carried in Code Sections 9336 et seq. In as much as Thompson's attempted acceptance of the second office (City Manager) was legally ineffective, it results that Thompson has not, legally speaking, held a second office while holding his first and incompatible office of Commissioner. Compare *Reckner* v. *School District,* 341 Pa. 375, 19 A. (2d) 402, 133 A. L. R. 1254. We

think, therefore, that the remedy, if any, against Thompson with reference to his retention of the office of City Commissioner under the circumstances is under the provisions of the Ouster Statute carried in the code at Section 1877 et seq., rather than under the quo warranto statute. The decree of the Circuit Court holding that Thompson has vacated his office as commissioner must, therefore, be reversed.

The bill seeks a judgment against Thompson for the use and benefit of the City of Paris in an amount equal to all of the funds of the City paid to him as City Manager.

The quo warranto statute in Code Section 9337 provides that the action also lies to "restrain improper alienations" of the funds of a corporation, "and to secure them for the benefit of those interested; and generally to compel faithful performance of duty." The word "corporation" as used in this code section is construed as referring to only a public corporation. *Crenshaw* v. *Barbour,* 162 Tenn. 235, 242, 36 S. W. (2d) 87, and refers to funds only that are "given or appropriated to a 'public or charitable purpose.' " *State* v. *Elliston,* 63 Tenn. 99, 102.

The municipality of Paris is a public corporation, and the funds which are procured for it by taxes are funds procured for a public purpose only. This court is, therefore, of the opinion that Code Section 9337 authorizes a judgment in this proceeding against Thompson for the funds of the City of Paris that have been paid to him as City Manager, if he is liable to the City for the money so paid him.

As heretofore pointed out, the attempted appointment of Thompson to this office was illegal and void, and against public policy. If he is allowed to retain the

money so paid him under this illegal and void act it would be very detrimental to the effectiveness of the public policy involved, and quite contrary to the public interest. The extent of profit which a person would then receive from the illegal receipt of public funds in this manner would depend only upon how long it would take in court proceedings to get him out of the office. That would be much to the detriment of the public interest, as well as to the public policy involved. For that reason, perhaps among others, it is generally held that the public funds of a municipality paid out under appointment to office that is void, it being an appointment that offends public policy, may be recovered back from the person to whom it was paid, and that this rule is of general application, and "is so inflexible that no inquiry into the good or bad intention of the officer * * * is permitted." 63 C. J. S., Municipal Corporations, Sections 989-990, pp. 552-554. The principle upon which recovery is allowed is one of prevention, rather than remedial justice. Its purpose is to remove from a public official the temptation to so violate his office of trust for personal benefit. Compare *Tisdale* v. *Tisdale,* 34 Tenn. 596.

 It results that the petitioner is entitled to a judgment against Thompson for the use and benefit of the City of Paris in an amount equal to the total amount paid him out of the public funds of the City for salary as City Manager. In as much as this record does not disclose what that amount now is, it will be necessary to remand the case for further appropriate proceedings to that end.

The judgment of the Circuit Court will be reversed. The cause will be remanded for entry of a decree adjudging (1) that Thompson has been usurping and unlawfully exercising the office of City Manager, and (2) that

Thompson did not vacate his office as a Commissioner of the City of Paris by usurping the duties and powers of the office of City Manager, and (3) that he be excluded from the further exercise of the office of City Manager of the City of Paris under the attempted appointment on January 2, 1951; and for further appropriate proceedings to determine the amount of the public funds of the City of Paris which have been paid to Thompson as its City Manager, and for the entry then of a judgment against Thompson for that amount for the use and benefit of the City of Paris.

All costs of the Circuit Court will be adjudged against Thompson. All costs of this court will be adjudged against Thompson and the sureties on his appeal bond.

NEIL, Chief Justice, dissents in part.

NEIL, Chief Justice (dissenting).

I am constrained to dissent from so much of the majority opinion as holds that the complainants are entitled to a judgment against the defendant for the total amount paid him as City Manager of the City of Paris.

I concur in the view that J. J. Thompson, being a City Commissioner, was ineligible to hold the office of City Manager; that under the circumstances his election to that office was in violation of law. But he was a *de facto* officer according to any definition of this term that is to be found in any published report or text book. Moreover no other person claimed any right or title to the office, or the emoluments thereof.

If he had brought suit to recover compensation for his services as de facto officer, I would hold that, by the possible weight of authority, his right of action would

fail. He is not here seeking any affirmative relief in that regard.

I base my dissent from the majority opinion upon the following authorities.

In 67 C. J. S., Officers, Section 145, p. 446, it is said: "Since the collection of the salary annexed to the office is an incident to the title, a de facto officer has no legal right to the emoluments of the office. It has, however, been held that an actual incumbent of a public office who is an officer de facto is entitled to the compensation attached to the office, *where there is no adverse contestant or de jure officer,* and he has acted in good faith with prima facie evidence of a right to perform the duties." (Emphasis supplied).

In 43 Am. Jur., Section 491, page 239, it is said: "The courts are agreed that in the absence of statutory permission, salary which has been paid a de facto officer cannot be recovered by the public authorities, at least where, acting in good faith, he actually rendered the services for which he was paid. But where the compensation was received without right or authority of law, it appears that a recovery may be had, as where authorities created an office without statutory authority to do so, or payment was made without authority of law *and no services were rendered.*" (Emphasis supplied).

In addition to the Federal Court cases cited in support of the text there appears the case of *Jones* v. *Dusman,* 246 Pa. 513, 92 A. 707, Ann. Cas. 1916D, 472.

In 93 A. L. R., 266, it is said: "There is considerable authority to the effect that a de facto officer who, pursuant to apparent authority and in good faith, has performed the duties pertaining to the office, may, in the absence of a de jure claimant, enforce payment by the public of

the compensation to which an incumbent of the office is entitled for services performed or duties fulfilled.''

In support of the foregoing statement by the annotator cases are cited from Arizona, Colorado, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Texas, Utah, Wisconsin, England and Newfoundland. See also *McKenna* v. *Nichols*, 295 Ky. 778, 175 S. W. (2d) 121; *State ex rel. Witten* v. *Ferguson,* 148 Ohio St. 702, 76 N. E. (2d) 886.

I think public policy has much to do in forbidding the election of Thompson to the office of City Manager, but it is not a controlling principle in determining the right of the City of Paris to compel the refund of his salary. He was performing the duties of the office under a mistaken view of the law, and his right to do so was not questioned from any source until the present suit was instituted. With all deference to the view of the majority I cannot agree that the refusal by the court to require a refund by a de facto officer would ''encourage the occupant of the office to continue to hold it in violation of law.'' He could hold no longer than the processes and power of the Court could be invoked to effect his ouster from the office, and such power is beyond his control.

I respectfully dissent.