J. D. CRENSHAW. *v.* REV. R. C. BARBOUR.

(*Nashville,* December Term, 1930.)

Opinion filed March 14, 1931.

ROBERTS & ROBERTS and NORMAN FARRELL, for complainant, appellant.

HARRY A. LUCK, W. H. HODGKINS and CHAS. M. ROBERTSON, for defendant, appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The National Baptist Convention of the United States of America is an unincorporated religious society with a very large membership. The object of the organization is thus stated in Article 2 of the Constitution:

"This Convention, by uniting Baptist churches and other Baptist organizations, such as may desire an organization of this kind, shall undertake to promote home and foreign missions; to encourage and support Christian education; to publish and distribute Sunday-school and other religious literature; and to engage in whatever other Christian endeavor is required to advance the Redeemer's kingdom throughout the world."

The society owns a very valuable building in Nashville, where its literature is published as well as the official

238

church paper, the title of which is "National Baptist Voice." For the past fifteen years complainant has been the editor of said paper, for which he has received an annual salary of $2500.

The society has an annual convention each year at some city in the United States, which is attended by and composed of delegates from the various churches affiliated with the society. The 1930 convention was held in Chicago in August. Without undertaking to detail the proceedings at that meeting, it is sufficient to say there was opposition to continuing complainant as editor of the Voice, and on the last day the convention resolved that "The election of an editor of the Voice is referred to the Board of Directors." The Board of Directors in turn referred the election of an editor of the Voice to the Executive Committee. This committee met in October, 1930, and elected defendant editor. Thereupon the bill herein was filed, upon the theory that under the express provision of the constitution the editor can only be elected by the annual convention; that this power is one that cannot be delegated; and that by virtue of the hold over provision in the constitution complainant is the editor of the Voice and is entitled to the salary of the office. The bill further charges that defendant is claiming that he has been legally elected editor and has the right to hold possession of the office. The prayer is "that an injunction issue restraining and enjoining the defendant from interfering in any way or manner whatsoever with the complainant exercising his duties of editor of the National Baptist Voice, and that defendant desist from assuming any of the duties of editor of said journal."

The chancellor entered a temporary stay order.

The defendant in due course filed his answer, practically admitting the facts alleged in the bill, but asserting that his election as editor of the Voice was in accordance with the constitution, and that he was entitled to the possession of the office.

The constitution of the society, the proceedings at the Chicago convention, and the action of the executive committee are made exhibits to the pleadings. No testimony was offered by either party, and no questions of fact are involved.

The cause was heard by the chancellor upon the pleadings and exhibits, from which he concluded that complainant was not entitled to the relief sought and dismissed the bill.

Complainant has appealed to this court and has assigned the action of the chancellor for error.

The controversy is a *bona-fide* one; and, so far as we are advised, the question involved has not heretofore been determined by any court. The parties are to be commended for submitting their rights to the court for determination.

The pertinent provisions of the Constitution are as follows:

"ARTICLE IV—OFFICERS AND THEIR ELIGIBILITY.

"Section 1. The officers of this Convention shall be a president, a vice-president-at-large, three regional vice-presidents, and a vice-president from each of the States and Territories from which messengers to this Convention may come, a secretary, four (4) assistant secretaries, a treasurer, a statistician, a historiographer, an auditor, an editor, and an attorney, all of whom shall be elected

at each annual meeting of this Convention and shall hold office until their successors shall have been elected.

"Section 2. The convention shall have the right to try the officers of the Executive Board and to dismiss them.

"Section 3. Any messenger in good and regular standing with any church holding membership in this Convention shall be eligible for any of the offices of this Convention, provided that he possesses sufficient learning and ability to insure competency for the position to which he aspires.

## "ARTICLE V—BOARDS.

"Section 1. BOARD OF DIRECTORS. The Board of Directors shall consist of the president, vice-president-at-large, three regional vice-presidents, and the vice-president of the various state and territorial conventions represented at each annual session, the secretary, the treasurer, the auditor, the statistician, the historiographer, the editor, the attorney, and the assistant secretaries of the Convention, fifteen of whom shall constitute a quorum for the transaction of business. The Board of Directors shall organize by electing a chairman and a secretary, who shall perform the duties usually assigned to like officers. It may, if so directed, create from among its own body such sub-committee as it may deem proper and make such rules and regulations not inconsistent with the Constitution of this Convention as it may deem necessary.

"It shall be the duty of the Board of Directors to complete the unfinished business of the Convention and to adjust such matters as may be referred to it by the Convention; and to fill any vacancies which may occur in the roster of the Convention, to nominate and fix the time

and place of the meetings; to enforce the orders of the Convention or any of its Boards; to examine and pass on, and recommend all claims against the Convention; and during the recess of the Convention have entire charge of its affairs.

"Executive Committee of Board of Directors: There shall be an Executive Committee of five (5) consisting of the President, Secretary, Treasurer, Auditor, and Attorney, whose duty it shall be.to look after any unfinished business of the Board of Directors or of the Convention, and to transact any urgent matters demanding immediate attention of the Board, and report same to the Board of Directors."

 Under the title "Religious Societies," we quote from 23 Ruling Case Law, 429, as follows:

"It is well settled that religious societies and churches may, by their governing bodies, adopt a constitution and prescribe rules and regulations for their own government and discipline, and such constitution, rules, and regulations will be obligatory on the members, congregations, and officers of such societies, and will be given effect by civil courts so long as they are reasonable and not inconsistent with or repugnant to the laws of the land, and are conformable and subordinate to the charter of the society where incorporated."

And on page 440 it is said: "When a person becomes a member of a church, he becomes so upon the condition of submission to its ecclesiastical jurisdiction, and however much he may be dissatisfied with the exercise of that jurisdiction, he has no right to invoke the supervisory power of a civil court so long as none of his civil rights are invaded."

The Court of Appeals of New York, in *Ostrom* v. *Green,* 161 N. Y., 353, said:

"There is a marked difference between a voluntary association with rules and one without. If lawful rules are made for the government of the members they must be conformed to until they are regularly changed. So long as they are in force they are the law of the association and must be obeyed."

If complainant is correct in his interpretation of the constitution, then the election of defendant as editor is illegal and void, and complainant, under the hold over provision of the constitution, is rightfully in possession of the office and entitled to the salary thereof. To permit defendant to take possession of the office would be an invasion of complainant's civil rights, which he has a right to protect. The only remedy available to him is that sought by this proceeding.

Counsel for defendant insist that complainant's remedy is that provided by section 5165 of Shannon's Code, but that statute only applies to public and corporation officers.

We are of opinion that, in principle, the decision in *State ex rel.* v. *Bratton,* 148 Tenn., 174, is controlling. In that case the legislature, in conformity with the statute, elected Bratton as a member of the board of election commissioners to succeed Carey. Carey, as hold over commissioner, filed the bill to enjoin Bratton from assuming office, upon the ground that his election was illegal and void for the reason that Bratton, being a member of the legislature, was ineligible to the office of election commissioner. This court sustained the bill, and said:

"This cause cannot be maintained as an action to determine the title, and secure possession of an office as on proceeding in the nature of *quo warranto,* but pending a peaceful determination of the question of title and possession the *de jure* incumbent may by injunction restrain the claimant from interfering with his possession, whose election is shown by the petition and answer to be void.

" 'An injunction will be granted at the instance of an incumbent of office to restrain a claimant for the office from interfering therewith until he has established his claim to the office.' 29 Cyc., p. 1416; 22 Cyc., p. 887; High on Injunctions, vol. 2, p. 1030; Pomeroy's Equity Jurisprudence, vol. 5, p. 591."

In concluding the opinion, the court said:

"But where, as in this case, it appears from the petition and answer that the election was void, and that the person elected is not eligible, and cannot legally qualify, and could be removed from office, under a proceeding in the nature of *quo warranto,* upon assuming the duties, nothing is left open for future litigation. The statements of the petition and answer, without more, settle the question of title to the office, and the right of the incumbent to hold over.

"The action of the chancellor in granting the writ of injunction is sustained on behalf of petitioner, the *de jure* incumbent, to restrain the respondent, who is ineligible, and who because of the inhibition of our constitution cannot qualify for the office within the period of his term as a member of the general assembly, and whose election is void."

Mr. Thompson, in his recent work on Corporations, vol. 2, p. 459, says: "To authorize an injunction in such

case, the court should be satisfied that the election was entirely without authority and void.''

And on page 401 of the same book it is said: ''The statute prescribing the mode of conducting an election must be followed. If there is no governing statute, then the mode prescribed by the by-laws must be pursued. An election which conformed neither to the charter nor to the by-laws was held void.''

█ This brings us to the question of the constitutionality of the election of defendant as editor of the Voice. It is a fundamental principle in constitutional law that such powers as the constitution confers upon an organization cannot be delegated in the absence of express authorization. 12 Corpus Juris, 839.

With respect to the right of a board of directors of a private corporation to delegate authority, the following statement is made in 14 Corpus Juris, pp. 95-96, to-wit: ''Certainly they may delegate to one of their number, or to an executive committee, or a particular office or agent the power to perform purely ministerial acts, but, except in some jurisdictions, they cannot delegate their own discretionary powers. . . . Even where it is expressly provided by statute, charter, or by-law, that an executive committee shall have the power of the board of directors, the powers authorized to be delegated as well as those in fact delegated, will be construed to be limited to business transactions of an ordinary, current, routine or ministerial nature.''

█ From the constitution, as well as from the published report of the proceedings of the convention at Kansas City, in 1929, which is exhibited, it appears that this society is carrying on a very extensive work in missions, education and publication. It has many boards and

committees who make reports to the convention. The convention has to consider and pass upon all of these matters, as well as to consider questions pertaining to the financing of the various activities of the organization. The number of delegates attending the annual session is very large, and the 1930 convention was in session twelve days. In our opinion, the provision of the constitution authorizing the Board of Directors and the Executive Committee to "complete the unfinished business of the Convention" refers to the ordinary routine business, largely of a ministerial character, and which does not particularly involve an exercise of discretion. The constitution expressly provides that the editor shall be elected at the annual convention, and, nothing appearing to the contrary, we assume that this requirement has heretofore been followed. The success of this organization depends very largely upon the character and efficiency of its officers. This was the most important duty the convention had to perform, and we cannot believe that in adopting the constitution the members intended that a committee of five should have authority to fill these important offices. When it comes to matters of less importance, such as are ordinarily submitted to and dealt with by an organization of this character, we can well understand why it would be both advisable and necessary to have them considered in detail and passed upon by a board or committee. In adopting the constitution the society could have easily provided for the election of officers by some board or committee, but they did not see fit to do this. The society can, if it wishes, make such change by amending its constitution. Where, as in this cause, the constitution expressly provides for the election of officers at the annual convention and by the

convention, we are unwilling to modify this plain and unambiguous mandate by construing the term "unfinished business of the Convention" to mean that either the Board of Directors or the Executive Committee can elect constitutional officers, particularly when, under the authorities, this term has generally been construed to mean ordinary or routine business that does not involve the exercise of discretion.

We feel constrained, therefore, to reverse the chancellor and grant complainant the relief asked for.