STATE of Tennessee, ex rel., JONES, et al., Plaintiffs–Appellants,

v.

Edgar L. BURNETT and Eagle Transit, Inc., Defendants–Appellees.

Supreme Court of Tennessee, at Nashville.

Nov. 14, 1988.

Kirk C. Waite, Brentwood, and Charles C. Morrow, Nashville, for plaintiffs-appellants.

P.V. Jackson, Nashville, for defendants-appellees.

## OPINION

HARBISON, Chief Justice.

This action was instituted on January 5, 1982, for the purpose of dissolving a closely held corporation through the appointment of a receiver. The action was brought as a *quo warranto* suit pursuant to the provisions of T.C.A. § 29-35-101.[1] It was admitted in the pleadings that the stock of the corporation was equally held by Ray Jones and Edgar L. Burnett; that the parties had reached a deadlock in the management of the affairs of the business; and that the appointment of a receiver was appropriate. Many years ago, this Court held:

> Under circumstances like these, where there are such dissensions within the corporation as that its business cannot be honestly or properly managed, a court of equity will intervene at the suit of a stockholder, appoint a receiver, and wind up the affairs of the concern. *Nashville Packet Company v. Neville,* 144 Tenn. 698, 702, 235 S.W. 64, 65 (1921).

The Chancellor duly appointed a receiver, and the affairs of the corporation were terminated. No issues are presented on appeal concerning any action of the receiver. The plaintiff Jones, however, on behalf of himself and the corporation, sought damages against Burnett for breach of Burnett's fiduciary duties as a corporate officer and director in entering into a competing business while still an official of the original corporation. After a lengthy evidentiary hearing, the Chancellor dismissed that claim. The only issues on appeal concern the claim for damages against Burnett. After careful consideration of the record, we are of the opinion that the evidence does not preponderate against the findings of the Chancellor. Accordingly, his judgment is affirmed.

The case was tried on oral testimony. There was conflicting evidence, and issues of credibility of the witnesses were clearly involved. The case is subject to de novo review in this Court under the provisions of Rule 13(d), T.R.A.P., but the findings of fact of the Chancellor are presumed to be correct. In addition, great weight must be given to those findings in view of the issues of credibility which were presented.

Plaintiff Jones and the defendant Burnett formed a corporation known as Eagle Transit, Inc., in the latter part of 1980. The corporation began operations in November of that year, and its business terminated in late December, 1981, resulting in the filing of the present action in early January, 1982.

Each of the stockholders owned fifty per cent of the capital stock. The parties borrowed $10,000.00 as initial capital, on collateral supplied wholly by Burnett. This loan was repaid in due course and is not at issue here.

The business of the corporation was that of supplying truck drivers to motor carriers. It was in the nature of a personnel service. The company had no long-term contracts with any of its customers or with any of the truck drivers. It simply furnished drivers to customers in need of long-distance truck drivers and local drivers. The corporation charged customers for supplying personnel and, in turn, paid the drivers at a fixed rate per mile. The corporation also collected from its customers premiums for group insurance on the truck drivers.

From the inception of the business until June, 1981, Mr. Burnett worked full time for the principal customer of the corporation. He did not spend a great deal of time at the office of Eagle Transit, Inc., and drew no salary from the company. During June, 1981, however, Mr. Burnett left his former employment and began working for Eagle Transit. Mr. Jones and his wife had worked full time in the business prior to that date and continued to do so until about September. Mr. Jones was president of the company and Mr. Burnett was its vice-president. Mrs. Jones served as the secre-

---

1. The complaint cites T.C.A. § 29-35-102, but that section pertains only to the affairs of public or charitable corporations. *State ex rel. v. Thompson,* 193 Tenn. 395, 246 S.W.2d 59 (1952). The action in the present case was instituted before enactment of current statutes providing for judicial dissolution. *See* T.C.A. §§ 48-24-301 through 304.

tary. Both she and Mr. Jones were paid a modest weekly salary. When he came to work for the company, Mr. Burnett was paid the same amount as Mr. Jones.

Mr. Jones was in poor health, and during September, 1981, he was hospitalized. Thereafter he did not return to work for the company on a full-time basis, although he continued to draw a salary and to work from time to time, particularly in dealing with the various truck drivers and supplying their needs. During October, 1981, a child of Mr. and Mrs. Jones was injured, and Mrs. Jones was off from work for some time. Her services with the company were terminated in November.

From about September until December, relationships between Mr. Burnett and Mr. Jones became strained. Mr. Burnett made it apparent that he would like to get out of the business, and the health of Mr. Jones was such that he also was interested in disposing of his stock. The parties discussed a stock purchase on several occasions, but they never entered into any formal contract or agreement by which either might acquire the stock of the other. An interim financial statement issued in September, 1981, showed the corporation to be in a deficit position; but a revised statement issued in November revealed that there had been several bookkeeping errors, and that the corporation was actually operating at a net profit.

During November Mr. Jones discussed the sale of his stock with an outside prospective purchaser, a competing corporation. Mr. Burnett protested and advised Jones that he did not want to have an outside associate. After numerous further discussions, Mr. Jones, through counsel, made a formal offer on December 22, 1981, to sell his stock to Burnett. One of the terms of this offer was that there would be no "non-compete" agreement required by either party. The corporation had not required such an agreement from any of its officers or other personnel.

The terms of this offer were not acceptable to Mr. Burnett, who was by this time acting as chief operating and executive officer of the corporation. Feelings between the two men had become quite strained, and they differed with respect to a number of operating policies. In late November or early December Mr. Burnett stopped the weekly salary of Mr. Jones. He caused the locks on the company's post office box to be changed and placed a substantial amount of corporate funds in a special account on which Jones did not have check-writing authority. On the other hand, Mr. Jones seldom came to the company office. He paid himself through "Comdata" checks wired to himself. These funds were normally used to pay interim expenses of the truck drivers. After Mr. Burnett in effect impounded the corporate checking account, Mr. Jones told the largest customer of the company that the firm could no longer supply truck drivers.

Without notice, on the evening of December 28, 1981, or early the following morning Mr. Jones caused all of the office furniture, files, telephones and supplies to be removed. It was necessary for Mr. Burnett and other company personnel to try to operate out of Mr. Burnett's home until other arrangements could be made. Before December 29, most of the truck drivers had been laid off as was customary during the holiday season.

On the morning of December 29, 1981, Mr. Burnett, after consulting with his attorney, caused a charter to be issued for a competing corporation, B & B Driving Service, Inc., of which Mr. Burnett was the sole stockholder.

There is conflicting testimony in the record as to whether Mr. Burnett had planned to form a competing company prior to December 29. In all events, he did not obtain a charter until that date. Thereafter he, the company bookkeeper and other employees of Eagle Transit, Inc. began operating a rival business, utilizing truck drivers formerly dispatched by Eagle for former customers of Eagle.

As previously stated, there is no issue on appeal concerning the receivership of Eagle Transit, Inc. or the accounting connected therewith. The receiver testified at trial that Mr. Burnett ultimately turned over to him all corporate funds of Eagle which

Burnett had caused to be impounded, and the receiver had collected all other debts owing to the company. The company proved to be insolvent, and there were insufficient assets to pay all of its debts and the expenses of the receivership. As previously stated, however, the only claim asserted on appeal is one for damages against Mr. Burnett for entering into a rival or competing business while still an officer and director of Eagle Transit, Inc.

This Court had occasion to deal with a similar situation in the recent case of *International House of Talent v. Alabama,* 712 S.W.2d 78 (Tenn.1986). There the Court said:

> If the two equal stockholders were unable to resolve their internal dissension, the corporate laws of the state gave Morris ample authority to file a suit for dissolution or other appropriate relief. He was not, in our opinion, entitled to remain on the board of directors of the corporation and to control one-half of its stock, and then set out deliberately to take its contracts and customers, stripping it of the revenues to be derived therefrom. 712 S.W.2d at 89.

In the course of that opinion, the Court discussed the fiduciary duties of officers and directors of a corporation, and it is not necessary to repeat here the citation of authorities contained in that opinion.

The facts of the present case, however, are quite different from those in the *Alabama* case, *supra.* There the company had a valuable long-term contract to act as the exclusive agent in the booking of a highly popular entertainment group. The only accounting required by the Court in that case was with respect to the diversion of the client with whom the agency contract existed.

In the present case, there were no binding agreements with any of the customers of Eagle Transit, Inc. There is no showing that there was any substantial diversion of corporate clients prior to the actions taken by Mr. Jones on December 29 which, in effect, closed the corporate offices. At

most Mr. Burnett may have considered going into a competing business, but he had taken no substantial steps whatever to do so until Mr. Jones seized the office furnishings and equipment. For several weeks after December 29, 1981, Mr. Burnett or the company bookkeeper continued to make payments on obligations of Eagle Transit. They assisted the receiver in terminating its affairs in an orderly manner. There is no evidence that Mr. Jones attempted to continue to operate the Eagle business or to continue the corporation as a going concern. Again, this is a material difference from the facts in the *Alabama* case, *supra.*

The Chancellor concluded that under the facts of this case it was not improper for Mr. Burnett to leave the employment of Eagle Transit and to go into competition in the absence of proof that the principal reason for doing so was to destroy the former business. He found no such intention in the present case. In our opinion, the evidence supports that finding. There is no showing that Mr. Burnett diverted corporate assets, customers or opportunities to a competing business until after Mr. Jones had closed the offices of the corporation and had rendered its continuation in business impracticable.[2]

The two stockholders of the corporation were in complete dissension and disagreement with respect to company policies. Their personal relationships had deteriorated. Each was represented by counsel. Mr. Jones had for months been seeking to dispose of his interest in the corporation, but the parties could not agree upon terms. The Court finds that the record supports the following conclusion of the trial judge:

> The Court finds Burnett's motives and reasons for forming the competing business was (sic) Jones' refusal to buy or sell, in not working and closing down the office.

The judgment of the trial court is affirmed. Costs on appeal are taxed to appellant. The cause will be remanded to the

---

**2.** Mr. Jones admitted at trial that this action by him was a "mistake." The only plausible reason

for it was to disrupt or discontinue the operation of the Eagle business.

trial court for assessment and collection of costs accrued there and for any other proceedings which may be necessary.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.