884 S.W.2d 438 (1994)
STATE of Tennessee By and Through John W. PIEROTTI, District Attorney General, ex rel. Col. Lewis P. BOONE, Jr., USAF (Ret.), Otis N. Fussell, and Edgar Johnson, Individually and on behalf of all others similarly situated, Plaintiffs-Appellees, and
Psalms, Inc., Involuntary Plaintiff,
v.
Don SUNDQUIST, Jon Simpson, Fred Grogan, Howard Oakley, Berry Terry, William Morris, III, Martha Sundquist, Mack Browder, and William H. Martin, Defendants-Appellants.
No. 02S01-9311-CV-00072.
Supreme Court of Tennessee, at Jackson.
August 29, 1994.
Petition to Rehear Denied October 3, 1994.
*439 Frank J. Glanker, Jr., C. Barry Ward, Paul R. Lawler, Glankler Brown, Memphis, for plaintiffs-appellees.
Leo Bearman, Jr., Elizabeth E. Chance, Heiskell, Donelson, Bearman, Adams, Williams & Caldwell, Memphis, for defendants-appellants.

OPINION
REID, Chief Justice.
This case presents an appeal by the defendants-appellants, current and former members of the board of directors of Psalms, Inc. ("Psalms"), from the decision of the Court of Appeals that a quo warranto action may be maintained against them pursuant to T.C.A. § 29-35-102. The judgment of the Court of Appeals is affirmed.
Psalms is a corporation chartered by the State of Tennessee in 1981 for the purpose of "fulfill[ing] the social needs of humanity, particularly *440 for the elderly, by providing for the total care of the elderly including housing, sustenance, medical and other physical needs." The corporation has no shareholders or members, and is controlled entirely by its board of directors. It has qualified as a Section 501(c)(3) corporation under the Internal Revenue Code. Psalms owns a retirement community in Memphis, Tennessee, called Kirby Pines Estates ("Kirby Pines").
Each individual plaintiff became a resident of Kirby Pines pursuant to a written contract with Psalms. The contract requires the resident to pay a substantial entrance fee and a monthly maintenance fee. In exchange, Psalms is required to provide the resident with care for life, including care in the Psalms nursing facility, if needed, at no additional charge. Upon the death of a resident, Psalms is obligated to refund 50 percent of the entrance fee to the resident's estate. The contract specifically provides that the residents of Kirby Pines do not obtain any rights, title or interest in the real or personal property of Kirby Pines or Psalms.
The individual plaintiffs sued the board of directors of Psalms individually on the following alternative theories: (1) a derivative action under T.C.A. § 48-56-401 on behalf of the corporation against the directors for grossly negligent management of the corporation; (2) an action for breach of fiduciary duties owed by the directors to the plaintiffs; and (3) violation of the Tennessee Consumer Protection Act, T.C.A. §§ 47-18-101 et seq. The State on relation of the individual plaintiffs, by and through the District Attorney General, joined as a party plaintiff and asserted a cause of action against the defendants in the nature of quo warranto pursuant to T.C.A. §§ 29-35-101 et seq. The plaintiffs did not allege that Psalms had breached any of its contracts with the residents; nor did they allege that the directors had induced Psalms to breach any of its contracts with the residents. Rather, the plaintiffs alleged that the directors have been grossly negligent in the management of the corporation's affairs and their mismanagement has jeopardized the corporation's ability to perform according to the "lifecare" contracts.
The trial court granted the defendants' motion for summary judgment, on the ground that the plaintiffs lacked standing to maintain the action under any theory asserted. The Court of Appeals affirmed the trial court on all issues except the action in the nature of quo warranto. The Court of Appeals ruled that the plaintiffs could not bring a derivative suit, because they were neither directors nor members of Psalms. The Court of Appeals also held that the directors owed no fiduciary duty to the plaintiffs as third persons contracting with the corporation. The Court of Appeals found no cause of action under the Tennessee Consumer Protection Act, because there was no "consumer transaction" between the plaintiffs and the directors. This Court affirms, without discussion, the decision of the Court of Appeals affirming summary judgment for the defendants on these grounds.
With regard to the quo warranto action, however, the Court of Appeals reversed the trial court and found that the plaintiffs have standing as relators under T.C.A. § 29-35-102, and held that that statute applies to the "affairs of public or charitable corporations." The Court of Appeals then concluded that Psalms is a "charitable institution," thus making its directors subject to a quo warranto proceeding.
The first issue to be considered in reviewing this decision by the Court of Appeals is whether a quo warranto action may be brought under T.C.A. § 29-35-102 against the directors of a charitable corporation. In State ex rel. Cates v. Standard Oil Co. of Kentucky, 120 Tenn. 86, 110 S.W. 565 (1908), aff'd, 217 U.S. 413, 30 S.Ct. 543, 54 L.Ed. 817 (1910), the Court reviewed the origin of quo warranto:
The writ of quo warranto and the information in the nature of quo warranto have been used against corporations and against persons claiming corporate franchises from the earliest times. The ancient theory of the remedy was that a franchise is a portion of the royal prerogative, granted to the subject and existing in his hands, and that to misuse or usurp this delegated right is an infringement upon the rights of the sovereign; and accordingly, as elsewhere *441 seen, the form of the judgment anciently was that the franchise be seized into the king's hands. In the United States the sovereign power resides in the State, the commonwealth, or the people, according to various theories, and the information in such a case proceeds on the same theory. The theory is that "it is a tacit condition of a grant of incorporation that the grantees shall act up to the end or design for which they were incorporated; and hence, through neglect or abuse of its franchises, a corporation may forfeit its charter as for condition broken, or for a breach of trust," and that, "where there has been a misuser or a nonuser in regard to matters which are of the essence of the contract between the corporation and the State, and the acts or omissions complained of have been repeated and willful, they constitute a just ground of forfeiture." (citation omitted)
120 Tenn. at 121-122, 110 S.W. at 573.
Although neither the ancient writ of quo warranto, nor the information in the nature thereof, was ever in force in this State, the legislature, from time to time, has passed acts that accomplish the same purposes. State ex rel. v. McConnell, 71 Tenn. 332, 335 (1879). Section 8 of the Acts 1845-1846, Chapter 55, stated in pertinent part:
It shall be lawful for the Attorney General to file a bill, in the nature of a bill in equity, in the court of chancery or circuit court, as hereinbefore directed, to restrain by injunction any corporation from assuming or exercising any franchise not granted; to bring the directors, managers and officers of a corporation, or the trustees of funds given for a public or charitable purpose to an account for the management and disposition of the property confided to their care; to remove such officers or trustees upon proof of misconduct; to secure for the benefit of all interested the property or funds aforesaid; to set aside and restrain improper alienations thereof, and generally to compel faithful performance of duty; to prevent malversation, peculation and waste.... (emphasis added)
When codified in 1858, the above provision was separated into multiple sections, which are substantially the same as the current quo warranto statutes, T.C.A. §§ 29-35-101 et seq. The pertinent statutes provide as follows:
XX-XX-XXX. Grounds for action.  An action lies in the name of the state against the person or corporation offending, in the following cases:
(1) Whenever any person unlawfully holds or exercises any public office or franchise within this state, or any office in any corporation created by the laws of this state;
(2) Whenever any public officer has done, or suffered to be done, any act which works a forfeiture of his office;
(3) When any persons act as a corporation within this state, without being authorized by law;
(4) Or if, being incorporated, they:
(A) Do or omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation;
(B) Exercise powers not conferred by law; or
(C) Fail to exercise powers conferred by law and essential to the corporate existence.
XX-XX-XXX. Corporate officers  Trustees.  The action also lies against the directors, managers, and officers of a corporation, or the trustees of funds given for a public or charitable purpose:
(1) To bring them to an account for the management and disposition of property intrusted to their care;
(2) To remove such officers or trustees on proof of misconduct;
(3) To prevent malversation, peculation, and waste;
(4) To set aside and restrain improper alienations of such property or funds, and to secure them for the benefit of those interested; and
(5) Generally to compel faithful performance of duty.
A quo warranto action may be brought against five classes of defendants: public officers, corporation officers, usurpers *442 of any franchises, corporations, and trustees. As described in Caruthers' History of a Lawsuit § 604 (8th ed. 1963), there are three general grounds for a quo warranto action:
1. Usurpation. This applies to the first four [classes of defendants]. It consists in unlawfully holding or exercising a public or corporation office, or a franchise, or the powers of a corporation.
2. Acts of omissions which amount to forfeiture. This applies to public and corporate officers, corporations, and trustees of funds given for a public or charitable purpose. It implies that they are no usurpers, but are lawfully invested with their official, corporate or trust powers, and have forfeited them by positive willful abuse or neglect. The action lies, says the statute, against a "public officer who has done, or suffered to be done, any act which works a forfeiture of his office;" against a corporation which does or permits acts which amount to a forfeiture of its rights and privileges as a corporation; also "to bring ... officers of a corporation, or the trustees of funds given for a public or charitable purpose, to an account," and "to remove such officers or trustees on proof of misconduct." So that these latter, as well as officers and corporations, may be guilty of such misconduct as amounts to a forfeiture of their powers. To ascertain what acts or omissions will amount to a forfeiture or surrender of corporate or official franchises, we must resort to the common law. That the act of neglect must be in willful violation of law is settled.
3. The exercise of powers not conferred by law, or the failure to exercise powers conferred by law and essential to the corporate existence. This applies to corporations, and they may or may not amount to a forfeiture. The mismanagement and improper disposition of property committed to their care is a delinquency in trustees, and in "the directors, managers and officers of a corporation," for which they may be called to account by this bill. "Malversation, peculation, and waste" are specifications of improper conduct in them. Some of these delinquencies would demand their removal from power. Others would be corrected by such suitable restrictions and adjustments as would secure the end in view, a "faithful performance of duty." (citations omitted).
Id. at 691-692.
The present quo warranto action is against the second class of defendants mentioned in Caruthers', corporate officers, and it alleges acts described in the third category, to bring corporation officers to an accounting for their mismanagement with regard to property committed to their care. This suit is not against the corporation, and the plaintiffs have made no allegations that the directors are unlawfully exercising the powers of the corporation or that their acts amount to a forfeiture of the corporation's powers. Thus, if this action is to proceed, it must be under T.C.A. § 29-35-102.
The defendants assert that the present action cannot be brought under T.C.A. § 29-35-102, because that section applies to directors, managers and officers of only public corporations or corporations which receive and are responsible for distributing funds given for a public or charitable purpose. The defendants contend that State ex rel. v. Thompson, 193 Tenn. 395, 246 S.W.2d 59 (Tenn. 1952), is controlling in this case. In Thompson, a quo warranto proceeding was brought to recover the salary paid to the city manager of Paris, Tennessee, who was illegally appointed by the city's board of commissioners. The Court stated:
The quo warranto statute in code section 9337 [same as current § 29-35-102] provides that the action also lies to "restrain improper alienations" of the funds of a corporation, "and to secure them for the benefit of those interested; and generally to compel faithful performance of duty." The word "corporation" as used in this code section is construed as referring to only a public corporation, Crenshaw v. Barbour, 162 Tenn. 235, 242, 36 S.W.2d 87, [1931], and refers to funds only that are "given or appropriated to a `public or charitable purpose.'" State v. Elliston, 63 Tenn. 99, 102 [1874]. (emphasis added)
Thompson, 193 Tenn. at 404, 246 S.W.2d at 63.
*443 The defendants' reliance on Thompson is misplaced, because the issue presented in the present case was not before the Court in that case and the statement quoted is based on an erroneous reading of the decision in Crenshaw v. Barbour, 162 Tenn. 235, 36 S.W.2d 87 (1931). In Crenshaw, the Court held that § 5165 (same as current § 29-35-101 and former § 9336) only applies to public and corporation officers. 162 Tenn. at 242, 36 S.W.2d at 89. The Court found that the quo warranto statute was not applicable in Crenshaw because the defendant was the officer of an unincorporated society. Thus, contrary to the holding in Thompson, Crenshaw did not limit the applicability of quo warranto actions to public corporations.
Thompson also relied on the decision in State ex rel. v. Elliston, 63 Tenn. 99 (1874). In that case, the Court examined whether the president and trustees of the corporation formed to establish the Nashville Female Academy came within the provisions of § 3410 of the 1858 Code (same as current § 29-35-102). The Court stated: "If the objects of the trust are for private benefit, or the property or funds, by the tenure of the trust, [are] appropriated to private uses or private ends, ... and not given or indicated to public or charitable purposes, then the Court of Chancery, under the provisions, has no right to interfere with its administration." 63 Tenn. at 102. Upon concluding that the corporation was a for-profit entity and the stockholders had other remedies, the Court declined to allow the quo warranto action.
The most recent decision construing the quo warranto statutes is State ex rel. Jones v. Burnett, 760 S.W.2d 629 (Tenn. 1988). That case involved a suit pursuant to T.C.A. § 29-35-101 to dissolve a closely held corporation through the appointment of a receiver. The Court observed that the action incorrectly had been brought under T.C.A. § 29-35-102:
The complaint cites T.C.A. § 29-35-102, but that section pertains only to the affairs of public or charitable corporations.
Id. at 630 n. 1 (emphasis added). The interpretation of T.C.A. § 29-35-102 in Burnett comports with the purpose stated in the statutes authorizing quo warranto proceedings. Accordingly, this Court holds that a quo warranto action may be brought under T.C.A. § 29-35-102 against the directors of a charitable corporation.
The next issue before the Court is whether Psalms is a charitable corporation for the purpose of this statute. Psalms' charter, as amended in 1982, indicates that the corporation was intended to qualify for tax exempt status under § 501(c)(3) of the Internal Revenue Code:
In the event of dissolution the residual assets of the corporation will be turned over to one or more organizations which themselves are exempt as organizations described in Sections 501(c)(3) and 170(c)(2) of the Internal Revenue Code of 1954 or corresponding sections of any prior or future law or to the federal, state, or local government for exclusive public purpose.
Notwithstanding any other provisions or articles, the corporation will not carry on any other activity not permitted to be carried on by (a) a corporation exempt from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code or the corresponding provision of any future United States Internal Revenue law; or (b) a corporation, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code of 1954 or any other corresponding provision of any future United States Internal Revenue law.
Section 501(c)(3) refers to organizations which are "organized and operated exclusively for religious, charitable, scientific ... or educational purposes...." Section 170(c)(2) concerns "charitable contributions" to § 501(c)(3) organizations. The record establishes that Psalms has been recognized as a § 501(c)(3) corporation. Psalms is designated as a public benefit corporation pursuant to T.C.A. § 48-68-104(2), which provides:
On January 1, 1988, each domestic corporation existing on January 1, 1988 that is or becomes subject to chapters 51-68 of this title shall be designated as a public benefit or a mutual benefit corporation as follows:

*444 (2) Any corporation which does not come within subsection (1) but which is recognized as exempt under § 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3)), or any successor section, is a public benefit corporation;
Nonprofit corporations generally are recognized to be public and/or charitable in nature. See T.C.A. § 48-58-601(b) ("The general assembly finds and declares that the services of nonprofit boards are critical to the efficient conduct and management of the public and charitable affairs of the citizens of this state.") A "charitable institution" is defined by the taxation statutes in T.C.A. § 67-5-212(c) as "any nonprofit organization or association devoting its efforts and property, or any portion thereof, exclusively to the improvement of human rights and/or conditions in the community." Psalms' corporate purpose of "fulfill[ing] the social needs of humanity, particularly for the elderly," clearly satisfies this definition. See Shared Hospital Services Corp. v. Ferguson, 673 S.W.2d 135 (Tenn. 1984) and Christian Home For the Aged, Inc. v. Tennessee Assessment Appeals Comm., 790 S.W.2d 288 (Tenn. App. 1990).[1]
The applicability of a quo warranto proceeding to a Tennessee nonprofit corporation and its directors was discussed in State ex rel. Hall v. Minimum Salary Dept. of the African Methodist Episcopal Church, Inc., 477 S.W.2d 11 (Tenn. 1972). The suit was instituted on the relation of certain ministers against the church department and its directors asserting diversion of funds. The defendants moved to dismiss on the grounds that the department was not a public, charitable corporation and that an indispensable party, the parent church, was not before the court. Affirming the chancellor's order overruling the motion to dismiss, the Court stated:
The Minimum Salary Department of the African Methodist Episcopal Church, Inc., is a separate Tennessee corporation, chartered in Tennessee as a public welfare corporation, for charitable purposes, and as such is the only party necessary to a quo warranto proceeding in which all of the allegations of malfeasance and misfeasance are against the corporate officers of the Tennessee corporation.
477 S.W.2d at 13.
There are striking similarities between Hall and the present case. In both cases, funds collected by the corporation were intended to benefit a class of persons which had no ownership in, no control of, nor any membership in the corporation. Both actions were brought to force the defendants to account for their management of the funds intrusted to their care. The necessary conclusion is that Psalms is a charitable corporation for the purpose of T.C.A. § 29-35-102.
The defendants contend that the quo warranto statues may not be used to bring a suit in contravention of T.C.A. § 48-58-601, which grants immunity to directors and officers of nonprofit corporations, except when their "conduct amounts to willful, wanton or gross negligence." This section, which is part of the Tennessee Nonprofit Corporation Act, T.C.A. §§ 48-51-101 et seq., became law in 1986. In construing statutes, it is the duty of the Court to avoid a construction which will place one statute in conflict with another; therefore, the Court should resolve any possible conflict between the statutes in favor of each other, whenever possible, so as to provide a harmonious operation of the laws. Parkridge Hospital, Inc. v. Woods, 561 S.W.2d 754, 755 (Tenn. 1978).
The plaintiffs' complaint alleges acts of gross negligence and misconduct by certain of the defendant directors.[2] The defendants *445 have not filed an answer or in any other manner denied or controverted the allegations of the complaint. For the purposes of this appeal, these allegations are taken as true. Therefore, in the present case, T.C.A. § 48-58-601 does not preclude an action pursuant to T.C.A. § 29-35-102. Allowing a quo warranto action upon allegations of gross negligence on the part of directors of a charitable corporation is consistent with another provision in the Nonprofit Corporation Act which authorizes the removal of directors by judicial proceedings. Pursuant to T.C.A. § 48-58-110(a)(1), in the case of a public benefit corporation, the attorney general may commence a proceeding to remove a "director engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to the corporation...."
Another issue presented is whether the directors may be required to account for their performance regarding all of Psalms' activities, or just those activities relating to the corporation's charitable purpose. The defendants assert that quo warranto was not designed to permit inquiry into the utilization of funds received as payment for contracts or for services rendered. They reason that the Kirby Pines retirement community is not related to Psalms' charitable purpose because the residents must pay an entrance fee and monthly maintenance fees to enjoy the benefits offered. The defendants maintain that the language of T.C.A. § 29-35-102 limits the inquiry to "funds given for a public or charitable purpose." The defendants' argument misconstrues the statute. That phrase specifically modifies the term "trustees." The provisions of the five subsections embrace "directors, managers, and officers of a corporation" without limitations other than those previously discussed.
With respect to the funds of a corporation, there is no tracing requirement. The fact that a corporation is public or charitable is sufficient to make its directors, managers and officers accountable under T.C.A. § 29-35-102, regardless of the source of the corporate funds. The Court concludes, therefore, that a quo warranto action, alleging misconduct amounting to willful, wanton or gross negligence, for which T.C.A. § 48-58-601 provides no immunity, may be brought pursuant to T.C.A. § 29-35-102 against the director of a charitable corporation *446 regarding any of the corporation's activities. A quo warranto action is proper against the directors of Psalms in this case.
Since, in this case, no issue is made with regard to the relief available in the event the plaintiffs prevail, consideration of that matter by this Court is limited to the observation that the only relief available is that which is appropriate to a quo warranto proceeding.
The judgment of the Court of Appeals reversing the trial court's dismissal of the quo warranto action is affirmed, and the case is remanded for further proceedings.
Costs are taxed to the defendant-appellants.
DROWOTA, O'BRIEN, ANDERSON and BIRCH, JJ.
NOTES
[1] For taxation purposes, these statutes determine not only whether an organization is charitable but also whether the use made of its various properties qualifies them as exempt from taxation. The latter issue is not pertinent for purposes of analysis in a quo warranto proceeding.
[2] Plaintiffs asserted in their complaint, inter alia, that:

27. The Defendant Directors were guilty of neglect of duty and were grossly negligent in the fiduciary, statutory, common law and non-delegable duties with respect to the affairs of Plaintiffs and Psalms and/or evidenced a willful or wanton disregard to Plaintiffs' welfare in the following particulars:
a. Failing to establish necessary and appropriate reserves to fund Psalms' long-term life care obligation to the Plaintiff residents;
.....
c. Allowing the payment of development fees in excess of $2.5 million to TCS-Tennessee and/or RCA with no procedure for determining and establishing whether the development fees were in fact due and owing, were even required to be paid by the contracts, or that the costs upon which the fee was based had even been properly expended for Kirby Pines Estates in accordance with the contract terms;
.....
e. Approving the payment of development fees upon amounts improperly "kicked back" to the owners or employees of the management/development companies by certain third parties;
f. Failing to investigate, take bids and/or consider other management companies or development companies to manage or develop Kirby Pines Estates....;
.....
h. Allowing Trammell and/or Martin to transfer substantial amounts out of Psalms' bank accounts for their own personal or corporate benefit and to the financial detriment of Psalms, Inc. and the Plaintiffs;
i. Allowing Trammell, Martin and/or RCA to use Psalms' Certificates of Deposit as collateral for bank loans made by Trammell and/or Martin, which actions were and are to the financial detriment of Psalms Inc. and the Plaintiffs;
j. Making loans of Psalms' funds directly to RCA for no corporation or other legitimate purpose of Psalms;
k. Paying bonus compensation from Psalms' funds directly to Trammell in the face of a growing deficit which in 1990 exceeded $8,000,000.00;
l. Approving or ratifying fees of $326,000.00 received by Board Chairman Herzke which were illegal and improper,
.....
n. Taking expensive out of state trips for Board meetings at substantial cost to Psalms when Psalm, at all times, suffered from mounting deficits;
.....
p. Allowing residents to be overcharged for prescription drugs without the residents' knowledge;
.....
u. Failing to exercise proper supervision of Board Chairman Herzke after Herzke became an RCA paid consultant; and
v. Failing to terminate the management agreement upon RCA's insolvency in default of such agreement.