IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 13, 2002 Session

# CITY OF COLLEGEDALE, TENNESSEE, ET AL. v. HAMILTON COUNTY WATER AND WASTEWATER TREATMENT AUTHORITY

### Appeal from the Circuit Court for Anderson County
### No. 00C1814     Samuel H. Payne, Judge

### FILED JULY 31, 2002

### No. E2001-02041-COA-R3-CV

This is a suit brought by the City of Collegedale, seeking a declaration that Hamilton County Wastewater and Wastewater Treatment Authority is required to arbitrate a dispute between them in connection with the City annexing certain property served by the Authority. The complaint also sought a declaration that in the event the City prevails the Authority would not be entitled to prosecute a suit to condemn and re-acquire the facilities in question. The Trial Judge found in favor of the City on both issues and the Authority appeals. We affirm in part and vacate in part.

### Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated in Part and Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

John R. Anderson and Harry R. Cash, Chattanooga, Tennessee, for the Appellant, Hamilton County Water and Wastewater Treatment Authority

Sam D. Elliott, Chattanooga, Tennessee, for the Appellee, City of Collegedale, Tennessee

### OPINION

In this appeal the City seeks an order compelling the Authority to arbitrate a dispute arising in connection with the City's annexing certain property which as to waste water treatment was served by the Authority. The complaint insists that T.C.A. 6-51-111(b) entitles them to arbitration of the dispute.

The complaint also seeks a declaratory judgment declaring that in the event the City prevails and is entitled to service, maintain and own the waste water facilities pursuant to the aforesaid Code Section the Authority would not be entitled to prosecute a suit to condemn and re-acquire the facilities in question.

The Trial Court found both issues in favor of the City, resulting in the Authority's appeal, wherein they raise the following two issues:

## STATEMENT OF THE ISSUES

I. **THE TRIAL COURT ERRED IN HOLDING THAT §** *6-51-111* **CONTROLS AND THAT HAMILTON COUNTY WATER AND WASTEWATER TREATMENT AUTHORITY SHOULD BE COMPELLED TO SUBMIT TO ARBITRATION PURSUANT TO** *T.C.A. § 6-51-111(b).*

II. **THE TRIAL COURT ERRED IN HOLDING THAT THE AUTHORITY DID NOT HAVE THE RIGHT TO ACQUIRE THE FACILITIES THROUGH EMINENT DOMAIN PURSUANT TO 68-221-610(a).**

The facts necessary for resolution of this dispute are succinctly stated in the Authority's brief as follows:

## STATEMENT OF FACTS

This case involves a dispute between the City of Collegedale (hereinafter "Collegedale") and the Hamilton County Water and Wastewater Authority (hereinafter "Authority") over the ownership and control of certain of the Authority's sewer facilities located in Hamilton County in the Ooltewah community of Hamilton County, Tennessee. The facts in this care are largely undisputed.

The sewer facilities at issue were constructed and installed by both Hamilton County and the Authority. Prior to the establishment of the Authority in 1993, sewers in the unincorporated areas of Hamilton County were built and maintained by the County. In 1994, the County's sewer facilities were transferred to the Authority. Thereafter, the Authority maintained the existing "County" sewer facilities and built new facilities in the unincorporated areas of Hamilton County.

Among the sewer facilities built and maintained by the Authority after its establishment in 1993 were certain facilities in the Ooltewah community of northern Hamilton County. In April, 2000, Collegedale annexed the area in which some of the sewer facilities built and maintained by the Authority were installed. Collegedale claims that it has the right to perform or provide municipal and utility functions in the annexed areas by the powers granted to it under *T.C.A. §6-51-111*, a statute enacted in 1955. The Authority contends that the facilities in the annexed area are within the Authority's "service area" and that no municipality has the right, statutory or otherwise, to take facilities within the Authority's service area pursuant to *T.C.A. §68-221-601, et seq.,* and *T.C.A. §§5-6-120* and *205.*

During the annexation process in 1997, Collegedale approved a plan of services to provide the residents of the annexed area with information on what services Collegedale would provide to the annexed area. The plan of services provided to residents of the annexed area provided that Collegedale would subsidize the rate for sewer customers in the annexed area in order to equal the Collegedale sewer rate. It did not provide a time limit for how long the subsidy would be provided, nor did it provide that Collegedale would take over ownership and control of the facilities.

The Authority continually provided sewer service to the annexed area both before and after the annexation. In fact, the Authority still provides sewer service to the annexed area. The Authority also provided sewer service to at least one business which was located in Collegedale prior to the annexation.

On August 2, 2000, the Hamilton County Board of Commissioners passed Resolution Number 800-9 to set out in writing the Authority's service area. On the same date, the Authority's Board of Commissioners passed Resolution Number 800-1 to ratify, confirm and accept the service area established by the Hamilton County Board of Commissioners' Resolution Number 800-9. The Authority's Resolution was passed to put in writing what the Authority's service area was in light of the publicity surrounding the issue of urban growth.

The resolution of this dispute requires that we examine certain statutes touching on the subject and determine which are applicable to the case presented. Construction of the Statute is a question of law, and our review is *de novo* without any presumption accorded the determination of the Trial Court.

The City relies on, as heretofore noted, T.C.A. 6-51-111(b), which provides the following:

**6-51-111. Municipal property and services**. . . .

(b)  Subject to such exclusive right, any such matters upon which the respective parties are not in agreement in writing within sixty (60) days after the operative date of such annexation shall be settled by arbitration with the laws of arbitration of the state of Tennessee effective at the time of submission to the arbitrators, and § 29-5-101(2) shall not apply to any arbitration arising under this part and § 6-51-301. The award so rendered shall be transmitted to the chancery court of the county in which the annexing municipality is situated, and thereupon shall be subject to review in accordance with §§ 29-5-113 - 29-5-115 and 29-5-118.

The Authority relies upon portions of T.C.A. 5-6-120 and 5-6-205 to the following effect:

**5-6-120. Transfer of duties to water and wastewater treatment authorities.** -- (a) (1)  The duties of the county executive in regard to any petition filed pursuant to title 7, chapter 82, are transferred to the water and wastewater treatment authority board under title 68, chapter 221, part 6 in any county which has created such authority. Such petitions may be granted if the board determines in its sole discretion that the public convenience and necessity require the same. The general assembly enacts this section as a statement of its intent that this section is a clarification of title 68, chapter 221, part 6.  From and after the creation of a water and wastewater treatment authority and the establishment of its service area, the authority shall be the sole and exclusive provider of its authorized services in its service area. The designated service area for any particular function or service shall not include any area located within the boundaries of another governmental entity providing the same function or service on the date the service area is established.  Different service areas may be established for different functions or services. The authority may cede all or any portion of its functions or service area to another governmental entity upon the board determining in its sole discretion that the public convenience and necessity require the same.

. . . .

(b)  The authority granted in this section shall prevail over any other provision of the law to the contrary for all water and wastewater service providers proposing to provide such services in the service area of the authority.  Any city proposing to provide such services in the service area of the authority shall have authorization to do so only by filing a petition in the manner established by this section and receiving a cession by the authority.

**5-6-205. Effect on private and other acts.** -- (a)  Any provision of law, private act or general act of local application in conflict with any provision of this chapter and chapters 1 and 5 of this title is hereby repealed.

The Authority insists that the latter statutes repeal the ones relied upon by the City and the arbitration provision is superceded.

The general rule of statutory construction set out in <u>Cronin v. Howe</u>, 906 S.W.2d 910, 912 (Tenn. 1995), is to this effect:

> A construction which places one statute in conflict with another must be avoided; therefore, we must resolve any possible conflict between statutes in favor of each other, so as to provide a harmonious operation of the laws. *State By and Through Pierotti ex rel. Boone v. Sundquist*, 884 S.W.2d 438, 444 (Tenn. 1994). In the event two acts conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between the two, because the Legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation. *Wilson v. Johnson County*, 879 S.W.2d at 809. Repeals by implication are not favored, however, and will be recognized only when no fair and reasonable construction will permit the statutes to stand together. Id.

The parties in their briefs address the question of which statute was last passed. It appears that as to the conflicting provisions of the statutes above set out, the ones relied upon by the Authority--T.C.A. 5-6-120(a)(1) was passed last. An amendment to the statute relied upon by the City, T.C.A. 6-51-111(b), was passed subsequent to any amendment to the statutes relied upon by the Authority. The City cites us to the case of <u>Redmon v. LeFevre</u>, 503 S.W.2d 97 (Tenn. 1973), wherein the Court held that the passage of an amendment to a statute has the effect of re-enacting the entire statute as of the effective date of the amendment. This might be true where statutes, as often is the case, are stricken in their entirety and an amendment enacted by re-enacting the original statute, including the amendment. We doubt, however, this case is applicable because the amendment subsequent to the statutes relied upon by the Authority merely added a subsection unrelated to the issue we have before us. In this regard we also wonder whether the codification of the statute relied upon by the City at the beginning of the ensuing legislative year would serve to re-enact the statute as amended in its entirety.

We do not believe, however, it is necessary to resolve this question to dispose of the principal issue in dispute. We say this because the language contained in T.C.A. 5-6-120(a)(1), above referenced, is only applicable to areas which have been designated.

It is undisputed that no specific designation of a service area had been made as of the effective date of the City's annexation. Indeed, the Authority attempted subsequently--on August 2, 2000--to designate the area. The Authority argues, however, that the installation of its equipment served to designate its service area. We, however, are not impressed with this argument. As pointed out by the brief of the City, Webster's New Collegiate Dictionary (1974), defines the word "designate" as follows:

The word "designate" means 1(a) "to point out the location"; (b) to indicate; (c) to distinguish as to class; (d) specify, stipulate; 2. to call by a distinctive title, term or expression; 3. "to indicate and set apart for a specific purpose, office or duty;" 4. Denote. Webster's New Collegiate Dictionary (1974), s.v. "designate."

In State v. Mayor, Etc., of City of Red Lodge, 83 P. 642 (Mont. 1905), the Montana Supreme Court defined "designate" as follows:

The term "designate" is defined as follows: "To mark out and make known; to point out; to name; to indicate; to show; to distinguish by mark or description; to specify; to call by a distinctive title; to indicate or set apart for a purpose or duty." Webster's International Dictionary.

Moreover, any number of cases of similar import may be found in Words and Phrases, Vol. 12, page 415.

We conclude in light of the foregoing definitions that it was incumbent upon the Authority to take some formal action, as it subsequently did, to designate its service area. We say this because it would be rather burdensome for the City to otherwise identify the service area.

We accordingly find as to the first issue that because the Authority did not designate a service area, the Statute it relies upon is inapplicable.

As to the question of the right of the Authority to condemn the water sewage treatment in question, we decline to entertain this issue as it may be that upon arbitration the matter would be resolved to the satisfaction of the Authority. It does seem to us, however, that if the Authority can condemn that the City would also be entitled to condemn and condemnation proceedings between the two entities might go on indefinitely.

In our view it is appropriate to affirm the Trial Court as to the first issue and to vacate the judgment of the Trial Court relative to the question of condemnation. We remand the case for such further proceedings, if any, as may be necessary. Costs of appeal are adjudged against Hamilton County Water and Wastewater Treatment Authority, and its surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE