**Opinion issued April 16, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-25-00409-CV

————————————

**MARK GOLOBY AND RICHARD VEGA, Appellants**

**V.**

**LESLEY BRIONES, ADRIAN GARCIA, LINA HIDALGO, RODNEY ELLIS, AND TOM RAMSEY, ALL IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE HARRIS COUNTY COMMISSIONERS COURT, Appellees**

---

**On Appeal from the 333rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-40076**

---

* * *

IN RE RICHARD VEGA, Relator

Original Proceeding on Petition for Writ of Mandamus

**O P I N I O N**

Dual officeholding by government officials may implicate the common-law doctrine of incompatibility. *See Ehlinger v. Clark*, 8 S.W.2d 666, 674 (Tex. 1928). Appellants Mark Goloby and Richard Vega brought this suit for injunctive and mandamus relief,[1] contending Appellee Harris County Commissioner Adrian Garcia violated the incompatibility doctrine, and thus resigned his office as a commissioner, when he accepted an appointment by the Harris County Commissioners Court to the board of the Gulf Coast Protection District (GCPD). The trial court dismissed Appellants' claims for lack of jurisdiction. We affirm.

**Background**

The governing body of each Texas county is its commissioners court, comprised of the county judge and four county commissioners. *See* TEX. CONST. art. V, § 18(b); TEX. LOC. GOV'T CODE § 81.001. Garcia was elected to

---

[1] The appeal and original proceeding relate to the same underlying case. *See Goloby et al. v. Briones et al.*, No. 2024-40076, 333d Judicial District Court, Harris County, Texas.

represent Precinct 2 on the Harris County Commissioners Court in November 2018. He took office in January 2019 to serve a four-year term.

In 2021, the legislature created the GCPD to facilitate projects for the prevention and control of storm surge flooding along parts of the Texas Gulf coast. *See* TEX. SPEC. DIST. CODE § 9502.0301(a). The GCPD is composed of territory in five counties, one of which is Harris County. *See id*. §§ 9502.0102, .0104(a). The GCPD has various revenue raising powers (such as the power to impose taxes, some subject to voter approval, and to issue bonds and notes), the power to enter into contracts generally as well as into certain agreements with political subdivisions of the state, and the power of eminent domain. *See id*. §§ 9502.0302, .0307, .0312.

The GCPD is governed by a board of eleven directors. *See id*. § 9502.0201(a). The governor appoints six of them, and the commissioners courts of the five counties each appoint one director. *See id*. § 9502.0201(b). GCPD directors are "not entitled to compensation" for their service as such. *See id*. § 9502.0204.

Appellants allege that in August 2021, half-way through Garcia's first term as a commissioner, the Harris County Commissioners Court appointed Garcia as a director of the GCPD to serve an initial two-year term. They allege Garcia qualified for the director position, accepted the appointment, and executed the oath

of office and a bond on August 31, 2022, after which Garcia began acting as a GCPD director, including by casting votes on GCPD business. Appellants also allege that after Garcia began serving as a GCPD director, he "continued to participate as a member of Harris County Commissioners Court, including by casting a vote in favor of approving certain programs, and/or allocating or expending public funds as part of various projects."

Garcia was re-elected to the commissioners court in November 2022 and began his second four-year term as Precinct 2 commissioner in January 2023. Appellants allege that in June 2023, the commissioners court re-appointed Garcia to a four-year term as a GCPD director, and that in August 2023 he executed another oath of office and bond and continued performing his duties as a director.

Appellants brought this suit in August 2024, and allege that the minutes of the GCPD's August 14, 2024 meeting show that Tina Peterson was appointed by the Harris County Commissioners Court "to replace Adrian Garcia for the term expiring June 16, 2027."

In their operative petition, Appellants name as defendants all five members of the Harris County Commissioners Court—the Harris County Judge and the four Harris County Commissioners—in their official capacities. Appellants allege that because the offices of county commissioner and GCPD director conflict, under the conflicting-loyalties prong of the doctrine of incompatibility, Garcia resigned his

4

position as Precinct 2 commissioner by operation of law when he accepted a position as GCPD director. *See State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 930 (Tex. Crim. App. 1994). They seek injunctions prohibiting the commissioners court from paying Garcia's salary and "from disbursing any further funds for any items that were purportedly enacted on a 3-2 vote with Garcia voting with the majority during the period beginning with his qualification for the [GCPD] board . . . through the end of 2022," a writ of mandamus compelling the commissioners court to call a special election to fill the "vacancy" created by Garcia's resignation, and attorney's fees and costs.

Appellees filed a plea to the jurisdiction (and a supplemental plea after Appellants amended their pleadings), arguing they are immune from Appellants' claims due to governmental immunity and its derivatives. They also argued the trial court lacked jurisdiction for the separate reason that Appellants lack standing, both because only the State of Texas has authority to challenge an official's right to hold office and because Appellants alleged no actual injury distinct from any alleged injury to the general public.

After a hearing, the trial court granted Appellees' plea and entered a final order dismissing Appellants' claims with prejudice. The trial court's order does not state a basis for its ruling. Appellants timely appealed.

**Analysis**

Appellants raise five issues on appeal (which we re-order here): (1) whether Garcia resigned his position as Harris County Commissioner by operation of law when he qualified for and accepted the position as GCPD director; (2) whether Goloby has standing as a taxpayer to challenge expenditures authorized by Garcia's vote following his alleged resignation; (3) whether Vega has standing as a candidate to seek a writ of mandamus ordering a special election to fill the "vacancy" created by Garcia's alleged resignation; (4) whether the trial court has authority to issue such a writ; and (5) whether the trial court erred by dismissing Appellants' claims with prejudice. Because we conclude Garcia did not resign his position as a commissioner, we overrule the first issue and need not consider issues two through four.[2] We also overrule the fifth issue because the trial court did not err in dismissing the claims with prejudice.

**A.    Immunity law**

Sovereign immunity protects the State from lawsuits and deprives a trial court of subject-matter jurisdiction over a plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008).

---

[2] We need not reach the questions of standing because, even if Appellants have standing, they have not shown that Appellees lack immunity. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11–14 (Tex. 2011); *Ramirez v. Hotze*, No. 01-25-00301-CV, 2025 WL 3768096, at *5 (Tex. App.—Houston [1st Dist.] Dec. 31, 2025, pet. filed) (mem. op.).

Governmental immunity derives from the State's sovereign immunity and provides the same protections for political subdivisions of the State as sovereign immunity gives the State. *See City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). Counties are political subdivisions of the State and generally have governmental immunity. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018).

Appellants brought this suit against Appellees in their official capacities as Harris County Commissioners and the Harris County Judge. "[A]n official capacity suit is essentially a suit against the governmental agency for which the person works rather than a suit against the individual." *Sheedy v. Frederick*, No. 01-22-00663-CV, 2023 WL 8459494, at *6 (Tex. App.—Houston [1st Dist.] Dec. 7, 2023, pet. denied) (mem. op.). "Because a suit against government employees in their official capacities is, in all respects, a suit against the governmental entity, employees sued in their official capacities are shielded by sovereign immunity or governmental immunity." *Id.* (citing *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011)). As official-capacity defendants, Appellees thus have governmental immunity to suit unless immunity has been waived by the legislature or Appellants plead and prove that Appellees acted ultra vires. *See id.*; *see also City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) ("[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the

7

payment of money. To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act.").

A plaintiff bears the burden of affirmatively demonstrating the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Typically, that means a plaintiff suing a governmental entity or official-capacity defendant bears the burden of establishing that an immunity waiver applies or that the official-capacity defendant acted ultra vires. *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024); *Heinrich*, 284 S.W.3d at 372. But here, Appellants do not rely on an immunity waiver or contend Appellees acted ultra vires. Instead, they appear to argue Garcia simply has no immunity because he resigned his position as a commissioner when he accepted the position as a GCPD director.

## B. Pleas to the jurisdiction

Because immunity to suit defeats a trial court's subject-matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *Pepper Lawson Horizon Int'l Grp., LLC v. Tex. S. Univ.*, 669 S.W.3d 205, 211 (Tex. 2023). When, as here, a plea challenges the plaintiff's pleadings, "the government does not dispute the plaintiff's factual allegations, and evidence is irrelevant." *Powell*, 704 S.W.3d at 447. The question we must answer in evaluating a pleadings challenge is "whether

the alleged facts 'affirmatively demonstrate a trial court's subject matter jurisdiction.'" *Id*. (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

Whether a plaintiff has carried this burden is a question of law we review de novo, construing the pleadings liberally in the plaintiff's favor. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). And when the trial court grants a plea to the jurisdiction without stating the basis for its ruling, we may affirm on any basis properly before us. *Comm'n for Lawyer Discipline v. Stern*, 355 S.W.3d 129, 134 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

## C.    Garcia did not resign his position as a commissioner

Appellants' case is premised on their contention that Garcia resigned his position as a county commissioner, as a matter of law, when he accepted the commissioners court's appointment as a GCPD director. Appellants do not dispute that if Garcia did not resign, he is immune to their claims.

### 1.    Doctrine of incompatibility

Appellants contend Garcia resigned as commissioner based on the doctrine of incompatibility, specifically conflicting-loyalties incompatibility. *See Pirtle*, 887 S.W.2d at 930. Appellants argue the incompatibility stems from the fact that the offices of commissioner and GCPD director can contract with one another and have overlapping taxing authority, eminent-domain authority, and other powers.

9

For purposes of this opinion, we assume without deciding that the offices of commissioner and GCPD director are incompatible, such that the doctrine of conflicting-loyalties incompatibility—if it applies—would mean Garcia resigned his position as commissioner if he accepted an appointment as a GCPD director.

But "[c]ommon-law incompatibility is . . . not a single doctrine," and two other branches have been recognized in addition to conflicting-loyalties: self-employment and self-appointment. *See* Tex. Att'y Gen. Op. No. JC-0564 at 1–2 (2002). Self-employment incompatibility "bars an individual from holding two positions, one of which is immediately or ultimately answerable to the other," and self-appointment incompatibility "prohibits an officer from being appointed to a position over which the officer has appointment authority." *See id*. at 3; Tex. Att'y Gen. Op. No. KP-0487 at 2 (2025).

Self-appointment incompatibility is relevant here and was recognized in *Ehlinger v. Clark*. There, Fayette County sued to collect on two notes the defendant had executed in connection with an oil lease. *Ehlinger*, 8 S.W.2d at 667. The Fayette County Commissioners Court appointed the county judge to represent the county in the suit. *Id*. at 673. The county sought not only the amounts due under the notes, but also the fees to be paid to the county judge for his services in representing the county in the collection action. *Id*.

The supreme court held the commissioners court could not appoint the county judge as Fayette County's attorney in the suit. *Id*. at 674. "It is because of the obvious incompatibility of being both a member of a body making the appointment and an appointee of that body that the courts have with great unanimity throughout the country declared that all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint." *Id*. Although the county attorney "did have th[e] authority" to represent the county in the suit "because of his office," the fact that the commissioners court appointed one of its own members as its attorney in the suit meant "the contract of employment is void." *Id*.

Two years later, the Texarkana Court of Appeals decided *St. Louis Sw. Ry. Co. of Tex. v. Naples Indep. Sch. Dist.*, 30 S.W.2d 703 (Tex. Civ. App.— Texarkana 1930, no writ). In *Naples*, a statute gave a school district the power to assess tax amounts through a "board of equalization." *Id*. at 705. The statute required the district's trustees to appoint the board of equalization, and the trustees appointed themselves. *Id*. at 705–06. The school district later sued a railway company to collect taxes that had been assessed by the board of equalization, and the railway company challenged the assessments on grounds the trustees' self-appointments to the board of equalization were improper. *Id*. at 705.

11

Citing *Ehlinger*, the court held the trustees' self-appointment to the board of equalization was "an absolutely void act." *Id*. at 706. It reasoned that although the "statute plainly evidences the will of the Legislature to grant the power to the board of trustees to select and appoint an official board of equalization," the statute did not give the trustees the power to appoint a board of equalization composed "of themselves," but only "other qualified and suitable persons." *Id.* This conclusion followed from the rule that "[i]t is contrary to the policy of the law for an officer to use his official appointing power to place himself in office, so that, even in the absence of statutory inhibition, all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint." *Id*. (citation and internal quotation marks omitted)).

Two principles emerge from these cases. First, the self-appointment prong of the incompatibility doctrine prohibits a governmental body from appointing one of its own officers to another governmental office for which it has appointing authority. *Ehlinger*, 8 S.W.2d at 673–74. And second, where a governmental body purports to make such an appointment, the appointment is "an absolutely void act." *Naples*, 30 S.W.2d at 706. Appellants do not dispute that the effect of the self-appointment doctrine, where it applies, is to render an appointment made in violation of the doctrine void; they argue only that the self-appointment doctrine is inapplicable here, for reasons we discuss below.

12

The parties do not cite, and our research has not revealed, any post-*Naples* Texas cases applying self-appointment incompatibility. But since *Naples*, several Attorneys General of Texas have applied the doctrine in formal opinions, and those opinions uniformly interpret *Ehlinger* and *Naples* to establish the two principles set forth above. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0407 at 2 (2022) ("Self-appointment incompatibility precludes an officer from being appointed to a position over which the officer has appointment authority." (citing *Ehlinger*, 8 S.W.2d at 674)); Tex. Att'y Gen. Op. No. GA-0377 at 2 (2005) (any such appointment is "void as a matter of law" (citing *Naples*, 30 S.W.3d at 706)). While attorney general opinions are not binding on this Court, they are persuasive here because our independent analysis of *Naples* and *Ehlinger* leads us to the same conclusions. *See In re Smith*, 333 S.W.3d 582, 590 (Tex. 2011); *Texas Appleseed v. Spring Branch Indep. Sch. Dist.*, 388 S.W.3d 775, 783 n.2 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

## 2. Garcia's appointment as a GCPD director was void

If, as Appellants argue, conflicting-loyalties incompatibility controls, Garcia resigned his position as commissioner by operation of law when he accepted the appointment as a GCPD director. *See Pirtle*, 887 S.W.2d at 930. But if, as Appellees argue, self-appointment incompatibility controls, then Garcia's

appointment as a director was void and never took effect, meaning he did not resign as commissioner. *See Naples*, 30 S.W.2d at 706.

Logically, we should consider whether Garcia's appointment took effect before we consider any effects the appointment might have had. Thus, we first determine whether self-appointment incompatibility rendered Garcia's appointment as a GCPD director void before we assess any impact the appointment had under conflicting-loyalties incompatibility.

The Attorney General of Texas agrees with this order of operations. In 2002, the attorney general considered whether a county commissioner who was appointed by his commissioners court could simultaneously serve on the board of the county's groundwater conservation district. *See* Tex. Att'y Gen. Op. No. JC-0455 at 1 (2002). Without discussing self-appointment incompatibility, the attorney general initially concluded that conflicting-loyalties incompatibility would prevent the commissioner from serving in both offices, noting "the well-established principle that qualification for and acceptance of a second office operates as an automatic resignation from the first office." *Id*.

But nine months later, the attorney general acknowledged this conclusion was error because the original opinion "relied on the conflicting-loyalties portion of the doctrine" and "failed to address the effect of the self-appointment doctrine." *See* Tex. Att'y Gen. Op. No. JC-0455A at 1–2 (2002). In a corrected version of the

14

opinion, the attorney general concluded that, based on the self-appointment doctrine, "such appointments were void *ab initio*" and thus "we erred . . . in considering the effect of such appointments." *Id*. at 2. Because the "purported appointments at issue here were void," they could not result in the commissioners resigning their offices. *Id.* And because the self-appointment doctrine rendered the appointments void at the outset, "it was unnecessary for us in [the original opinion] even to reach the issue of conflicting-loyalties incompatibility." *Id*.

Appellants do not dispute that the commissioners court had the power to appoint a GCPD director. *See* TEX. SPEC. DIST. CODE § 9502.0201(b). Nor do they dispute that when the commissioners court appointed Garcia as a director, it appointed one of its own members. Therefore, the undisputed facts of this case fit squarely within both *Ehlinger*'s directive that "all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint," and the effect of that rule as set forth in *Naples* that any such purported appointment was "an absolutely void act." *Ehlinger*, 8 S.W.2d at 674; *Naples*, 30 S.W.3d at 706.

Appellants argue *Ehlinger* prohibits self-appointments only when a government officer is appointed to a compensated position, which the GCPD

15

director position was not. *See* TEX. SPEC. DIST. CODE § 9502.0204.[3] Appellants point to *Ehlinger*'s language that the commissioners court "cannot appoint as its attorney one of its own members, to wit, the county judge, . . . and that, therefore, the contract of his employment as attorney, *in so far as it provided for compensation*, was void." 8 S.W.2d at 674 (emphasis added). We do not read this language as limiting *Ehlinger*'s holding to compensated self-appointments.

First, under the unique facts of *Ehlinger*, the county judge had pre-existing authority to represent the commissioners court in the case and could not also be appointed as a compensated attorney for the court of which he was the presiding member and which would supervise his role as attorney:

> *The county judge, as a member of the commissioners' court of Fayette county, had the constitutional and statutory duty placed upon him of not only executing the contracts sued upon in this suit, but of seeing that these contracts were carried out by the defendant in error[,] and finally collecting the identical notes sued upon, in so far as the collection of these notes was placed upon the commissioners' court.* If the court in the course of its proceedings found it necessary to employ an attorney to collect these notes, then the county judge, as the presiding officer of that court, had the constitutional and statutory duty imposed upon him of president over the court in its deliberations while selecting an attorney, and of participating therein as such officer. On the other hand, if, after an attorney was employed, it should be found that the attorney was not performing his duties in a

---

[3] Because the GCPD director position is uncompensated, Garcia's appointment as a director does not implicate the emoluments provision of the Texas Constitution. *See* TEX. CONST. art. XVI, § 40 (subject to exceptions enumerated therein, "[n]o person shall hold or exercise at the same time, more than one civil office of emolument"); *Pirtle*, 887 S.W.2d at 931 (for purposes of article XVI, § 40, "[a]n 'emolument' is a pecuniary profit, gain, or advantage").

16

competent or faithful manner, it would become the duty of the commissioners' court, presided over by the county judge, to relieve such attorney of his duties and employ another. *It is because of the obvious incompatibility of being both a member of a body making the appointment and an appointee of that body that the courts have with great unanimity throughout the country declared that all officers who have the appointing power are disqualified for appointment to the offices to which they may appoint*.

We think the employment of the county judge as an attorney by the commissioners' court, over which he presided, comes clearly within the rule that the appointing[] power, in this instance the commissioners' court, cannot appoint as its attorney one of its own members, to wit, the county judge, as was done in this case, and that, therefore, the contract of his employment as attorney, in so far as it provided for compensation, was void. . . . *We do not say that the county judge had no authority to appear in the case and represent the county; on the contrary, he did have that authority because of his office, but for a like reason he could not become the employed attorney of the county in this proceeding*.

*Id.* at 674 (emphasis added).[4]  Here, Garcia did not have pre-existing authority to

represent Harris County as a director for the newly created GCPD, meaning his

---

[4]    Appellants also rely on *Smith v. Elliott* as supporting that self-appointment incompatibility applies only to compensated positions.  149 S.W.2d 1067 (Tex. Civ. App.—Amarillo 1941, writ ref'd).  *Smith* involved the sale of school land by a county judge the commissioners court appointed as substitute trustee for the deed-of-trust sale.  *Id.* at 1068.  The plaintiff argued the county judge could not serve as trustee because he was the acting county judge and the presiding officer of the commissioners court at the time of the appointment.  *Id*. at 1071.  The court of appeals rejected this challenge, explaining that the commissioners court had legal authority to manage the disposition of school lands and the county judge did not receive a commission on the sale.  *Id.* at 1071.  The court did not mention *Ehlinger*, self-appointment incompatibility, or the incompatibility doctrine generally, but relied on cases providing that a county judge has authority to act as an attorney for the county if he does not receive compensation and that trust beneficiaries may serve as trustees.  *Id.*  Although it is writ refused with binding precedential value, we disagree *Smith* concerns self-appointment incompatibility.

17

appointment, although uncompensated, gave him new powers. *See* TEX. SPEC. DIST. CODE §§ 9502.0201 (governing how directors are appointed), 9502.0301–.0312 (GCPD'S powers and duties).

Second, limiting application of self-appointment incompatibility to compensated positions would be contrary to the doctrine's obvious purposes, which include preventing the use of public offices for personal advancement, ensuring the most qualified candidates are appointed to open positions, and maintaining public confidence in the functions of government. *See Ehlinger*, 8 S.W.2d at 674 (discussing "obvious incompatibility" of self-appointments); *Naples*, 30 S.W.2d at 706 ("It is contrary to the policy of the law for an officer to use his official appointing power to place himself in office."); Tex. Att'y Gen. Op. No. LO-94-020 at 2 (1994) ("[A]n officer should not use the appointment power to benefit himself or herself, regardless of any incompatibility between the offices of the appointing power and the appointee."). These purposes are not dependent on whether the appointed position is compensated. The public deserves to have confidence that the commissioners court is not advancing its own members' interests with an appointment to the GCPD board but is thoroughly vetting candidates qualified for the position.

---

*See Ferreira v. Butler*, 575 S.W.3d 331, 335 n.29 (Tex. 2019) (describing "writ refused" opinion as having "the precedential value of one of our own").

18

Third, in the nearly one-hundred years since *Ehlinger* was decided, no attorney general opinion mentioning self-appointment incompatibility expresses it is limited to compensated self-appointments. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0487 at 2 (2025) (recognizing, without mention of compensation, that "[s]elf-appointment incompatibility prohibits an officer from being appointed to a position over which the officer has appointment authority"); Tex. Att'y Gen. Op. No. O-789 at 3 (1939) (stating, without mention of compensation, "[w]hen an official body is clothed with the power and duty of designating the person to fill a vacancy in public office, strong and controlling principles of public policy forbid such board or body from filling such vacancy by the appointment of one of its own members"). It "is a literal and absolute prohibition" on self-appointments and "not limited by the facts." Tex. Att'y Gen. Op. No. GA-0377 at 2 n.2 (2005).

Similarly, our sister states that recognize self-appointment incompatibility do not limit the doctrine to compensated appointments. *See, e.g.*, *Fowler v. Mitcham*, 291 S.E.2d 515, 518 (Ga. 1982) (recognizing, without mention of compensation, that "our courts have held that it is contrary to public policy to permit an official board having the power to appoint to an office to exercise that power by appointing one or more of their own body, unless the statute conferring the appointing power expressly authorizes self-appointment"); *State v. Thompson*, 246 S.W.2d 59, 62 (Tenn. 1952) (holding, without mention of compensation, that

19

"the Board of Commissioners of the City of Paris was without authority to appoint one of its own members to the office of City Manager of that City, and that the attempted appointment of Thompson was void; therefore, ineffective to place him in that office," and recognizing that the decisions of other states are "fairly uniform in holding that a council or board which has the power and duty of appointment to an office cannot select one of its own members"); *Bradley v. City Council of City of Greenville*, 46 S.E.2d 291, 295 (S.C. 1948) ("In the absence of constitutional or statutory provision, it is . . . contrary to public policy to permit an officer having an appointing power to use such power as a means of conferring an office upon himself, or to permit an appointing body to appoint one of its own members." (citation and internal quotation marks omitted)); *Wood v. Town of Whitehall*, 197 N.Y.S. 789, 791 (N.Y. Sup. Ct. 1923) ("When the members of a board are given the appointing power, it seems necessarily implied in that power that they cannot appoint themselves.").

We conclude self-appointment incompatibility is not limited to appointments to compensated positions but applies equally to uncompensated positions the appointee did not have a pre-existing duty to perform, including Garcia's appointment by the commissioners court as a GCPD director. *See Ehlinger*, 8 S.W.2d at 674; Tex. Att'y Gen. Op. No. GA-0377 at *2 n.2 (2005). Garcia's

20

appointment was void and did not effect his resignation as a county commissioner. *Naples*, 30 S.W.2d at 706.

**D.      Appellees are immune to Appellants' claims**

Under the facts as pled in Appellants' operative petition, Garcia did not resign his position as a county commissioner.  As an official-capacity defendant, he thus has governmental immunity to Appellants' claims.  *See City of Galveston*, 217 S.W.3d at 469; *Sheedy*, 2023 WL 8459494, at *6.  And because Garcia is immune to Appellants' claims, the trial court lacked subject-matter jurisdiction over them.  *See Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 655 & n.2.  The same is true of Appellants' claims against the other Appellees.  Appellants do not contend any other Appellee resigned his or her position, or that the other Appellees do not presently occupy the offices of county commissioner and county judge, respectively.  The trial court lacked subject-matter jurisdiction over them as well. *See id*.

Because the trial court lacked subject-matter jurisdiction over Appellants' claims, it properly granted Appellees' plea to the jurisdiction.  *See Miranda*, 133 S.W.3d at 226.  We overrule issue one[5] and need not consider issues two through four.

---

[5]      Because of this disposition, we likewise deny Vega's petition for writ of mandamus in Cause No. 01-26-00108-CV, arguing Garcia resigned as county commissioner as a matter of law.

**E.      The trial court properly dismissed Appellants' claims with prejudice**

In their fifth issue, Appellants contend the trial court erred by dismissing their claims with prejudice.  Appellants argue dismissal with prejudice is inappropriate because "dismissal on a plea to the jurisdiction would mean the court lacks jurisdiction."

"A dismissal of a lawsuit by granting a plea to the jurisdiction on the grounds of immunity 'is with prejudice because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined.'"  *Crotts v. Healey*, No. 01-15-00076-CV, 2015 WL 5890103, at \*3 (Tex. App.—Houston [1st Dist.] Oct. 8, 2015, pet. denied) (mem. op.) (quoting *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004)).  Moreover, where "a governmental unit filed its plea to the jurisdiction asserting its immunity and the plaintiff was given a reasonable opportunity to amend her petition, and the plaintiff's amended petition *still* did not allege facts that would constitute a waiver of immunity, the trial court should dismiss with prejudice." *Anderson v. Waller Cnty. Sheriff's Dep't.*, No. 01-20-00097-CV, 2021 WL 3042677, at \*8 (Tex. App.—Houston [1st Dist.] July 20, 2021, pet. denied) (mem. op.).

Appellees filed their plea to the jurisdiction in March 2025, and Appellants filed their second amended petition—their operative pleading—almost two months later.  Appellants thus had the opportunity to amend their pleading after Appellees

22

filed their plea, and the facts it alleged did not cure the jurisdictional defects. Dismissal with prejudice was proper. *See id*; *see also Sykes*, 136 S.W.3d at 639. We overrule Appellants' fifth issue.

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Justices Guerra, Johnson, and Dokupil.